# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| RUBIO'S RESTAURANTS, INC., *et al.*,[1] | ) ) ) | Case No. 20-12688 (MFW) |
| Debtors. | ) ) ) | (Jointly Administered) **Related to Docket Nos. 178, 189 and 224** |

### LIMITED OBJECTION AND RESERVATION OF RIGHTS OF WEINGARTEN ENTITIES TO THE AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF RUBIO'S RESTAURANTS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Weingarten Realty Investors, for itself and on behalf of its affiliates Weingarten Nostat, Inc. and WRI Summit REIT, LP (collectively, "Weingarten"), hereby objects to the *Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Rubio's Restaurants, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 178] (the "Plan"). In support, Weingarten respectfully represents as follows:

### BACKGROUND

1. Weingarten Nostat, Inc., as lessor, and Rubio's Restaurants, Inc. ("Rubio's"), as lessee, are parties to an unexpired lease of non-residential real property for a Rubio's Baja Grill restaurant located in the El Camino Promenade shopping center at 252 N. El Camino Real, Suite 4, Encinitas, CA 92024 (the "El Camino Lease").

2. WRI Summit REIT, LP, as lessor, and Rubio's, as lessee, are parties to an unexpired lease of non-residential real property for a Rubio's Coastal Grill restaurant located in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Rubio's Restaurants, Inc. (0303); MRRC Hold Co. (1242); Rubio's Restaurants of Nevada, Inc. (7609); and Rubio's Incentives, LLC (9359). The Debtors' mailing address is 2200 Faraday Avenue, Suite 250, Carlsbad, CA 92008.

The Summit at Scottsdale shopping center at 32415 N. Scottsdale Rd., Suite 105, Scottsdale, AZ 85266 (the "Summit Lease").

3. Both the El Camino Lease and the Summit Lease (collectively, the "Weingarten Leases") are among the leases that Debtors propose to assume pursuant to confirmation of the Plan. The Weingarten Leases are included in the Assumed Executory Contracts and Unexpired Leases Schedule included as <u>Exhibit F</u> to the *Plan Supplement to Joint Chapter 11 Plan of Reorganization of Rubio's Restaurants, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* filed at Docket No. 224 (the "Plan Supplement").

## **LIMITED OBJECTIONS TO THE PLAN**

***Debtors' Decisions to Assume or Reject Leases Must be Final as of Confirmation***

4. Weingarten objects to the Plan to the extent that it purports to include any authorization for the Debtors to reject leases after confirmation of the Plan.

5. Section 5.1(a) of the Plan provides for the deemed rejection of a lease as of confirmation unless it previously has been assumed, is subject to a pending motion to assume, or is included on the Assumed Executory Contracts and Unexpired Leases Schedule:

> All Executory Contracts and Unexpired Leases of the Debtors that are not otherwise assumed or rejected will be deemed rejected by the applicable Debtor or Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than (i) those that are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (ii) those that have been previously assumed or rejected pursuant to a Final Order by the Debtors prior to the Effective Date; and (iii) those that are the subject of a motion seeking assumption or rejection as of the Effective Date.

However, section 5.1(b) of the Plan purports to provide Debtors a right to change their minds about assumption or rejection after confirmation:

> [N]otwithstanding anything to the contrary herein, the Debtors reserve the right to either reject, (sic) any Executory Contract or Unexpired Lease

2

within 30 days after the entry of a Final Order resolving an objection to assumption or assumption and assignment, determining the Cure Cost under an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease.

6. Section 1123(b)(2) of the Bankruptcy Code provides that a plan may, "subject to section 365," provide for the assumption or rejection of contracts and leases. 11 U.S.C. § 1123(b)(2). Section 365(d)(4)(A) provides, in relevant part:

> [A]n unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
>
>   (i) the date that is 120 days after the date of the order for relief; or
>
>   (ii) the date of the entry of an order confirming the plan.

11 U.S.C. § 365(d)(4)(A).[2]

7. Consistent with the words used in §365(d)(4)(A), the case law is clear that a debtor has only until confirmation to assume or reject and cannot extend that decision beyond confirmation. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 529 (1984) ("In a Chapter 11 reorganization, a debtor-in- possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract, although a creditor may request the Bankruptcy Court to make such a determination within a particular time."). *See also Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 46 (2008) ("We agree with Bildisco's commonsense observation that the decision whether to reject a contract or lease must be made before confirmation."); *University Medical Center v. Sullivan*, 125 B.R. 121, 124 (E.D.

---

[2] Section 365(d)(4)(A) starts with the phrase "Subject to subparagraph (B)." Subparagraph (B) authorizes the Court to extend the 120 day period for cause; but the Court's authority to extend the 120 day period does not have any effect on the date of entry of the confirmation order as the earlier of the two periods of time in which assumption and rejection decisions must be made or authorize the Court to extend the time to assume or reject beyond entry of a confirmation order.

Pa. 1991) ("A debtor under Chapter 11 must elect to assume or reject any executory contract by the time a reorganization plan is confirmed . . . ").

8. The policy of § 365(d)(4)(A) is clear: that non-debtor counter-contract parties are entitled to know, just like all other creditors and parties in interest, how they and their contracts will be treated by debtors in the chapter 11 plans. That knowledge must be consistent with the time frames in which other creditors and parties in interest are provided such information and consistent with counter-contract parties' right to meaningfully participate in and protect their interests in the confirmation process.

9. Debtors' proposal that they be allowed to change their minds about assumption or rejection after confirmation is contrary to the clear and unambiguous language of § 365(d)(4)(A). Such would provide undue leverage to debtors in connection with resolution of assumption and assignment issues including, without limitation, adequate assurance, use, cure and so on; and would disenfranchise lessors that first are on the assumed list but then moved to the rejected list after confirmation (or otherwise after the time to vote and/or object to confirmation).

10. In addition, such procedure could prevent lessors from any recovery under the Plan. Weingarten understands that general unsecured creditors must opt-in to the releases provided for under the Plan and vote to accept the Plan to share in the recovery being provided to such creditors. Of course, a post-confirmation rejection of a lease that previously have been included for assumption would work a forfeiture of the lessor's right to recovery on its pre-petition and rejection claims under the lease.

11. None of these results is consistent with the requirements of sections 365, 1123 or 1129(a) of the Bankruptcy Code and thus the Plan provision enabling post-confirmation rejection must not be approved.

*Weingarten Objects to the Extent Debtors Seek Relief From Any Obligations Under Assumed Leases*

12. Weingarten further objects to the Plan unless the order confirming the Plan makes clear that Debtor shall remain responsible for all obligations under the Weingarten Leases post-assumption regardless when such may obligations first arose and/or to which time periods they relate (i.e., pre- or post-assumption). Section 5.2(c) of the Plan provides:

> Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Cost, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned, and the Cure Cost paid, shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

13. The inclusion of "Claims" in a cure provision is too broad both from the perspective of what must be cured so that assumption is free from default, as required by section 365, and because such brings the discharge and injunction provisions of the Plan into play. This provision is inconsistent with the obligations of a party to an assumed contract with respect to amounts that may become due after assumption, but which, under the broad Bankruptcy Code and Plan definitions, are or may be Claims as of confirmation but which are not yet due and payable.

14. The Plan adopts the Bankruptcy Code definition of "Claim." That very broad definition arguably includes obligations that have accrued or are accruing but which may not be known, or calculable, and may not yet be due and owing, and thus not a default requiring a cure as a condition to assumption. Thus, to provide for a discharge of all Claims relating to a lease upon assumption and payment of cure costs (which reflect obligations that have accrued, have

been billed, are due and owing, and with respect to which the Debtors are in default due to non-payment) is contrary to the Bankruptcy Code and to the legal effect of Debtors' assumption of leases and contracts, pursuant to which they are assuming all obligations thereunder.  In short, Debtors should not be relieved of any obligations under assumed leases.  Any order approving assumption of the Weingarten Leases must provide that its assumption is pursuant to their respective terms and that the Debtors will continue to be responsible for all obligations thereunder, regardless when they arose.

15. In addition, each of the Weingarten Leases provides that the Debtor must indemnify and hold Weingarten harmless with respect to any existing claims that may not become known until after assumption (*i.e.*, personal injury claims and personal property damage caused by the Debtor).  Any order approving assumption of the Weingarten Lease must provide that its assumption is pursuant to its terms and that the Debtor will continue to be responsible for all such indemnification obligations, regardless when they arose.

16. Weingarten further is entitled to recover attorney's fees and costs pursuant to the terms of the Weingarten Leases, which amount, as of the date of this limited objection, is $2400 for each lease; and, of course, will increase until all issues in respect of the Weingarten Leases have been resolved including whether and when the they will be assumed.  Such amount must also be included as part of Weingarten's cure claims.

## RESERVATION OF RIGHTS AND JOINDER

17. Weingarten reserves all rights to assert any and all other claims against the Debtor arising out of or related to the Weingarten Leases, including without limitation, claims for (a) the costs of any repair that may be necessary after inspection of the interior of the leased premises; (b) post-petition rent and other charges accruing; (c) any pecuniary losses suffered as a result of

any defaults by Debtor, including, but not limited to, attorneys' fees and costs incurred as a direct result of any further defaults; (d) any non-monetary defaults of which Weingarten does not have knowledge at this time; and (e) to respond, as necessary to any amendments by Debtors to the assumed contract list or proposed cure amounts for the Weingarten Leases.

18. Weingarten also reserves all rights to object to any proposed assignment of the Weingarten Leases on any basis, to the extent the Debtor seeks to assign the either of the Weingarten Leases, as well as any other rights it now has or may have under applicable law with respect to this matter including but not limited to any rights under Section 365 of the Bankruptcy Code.

19. To the extent not inconsistent herewith, Weingarten hereby joins in objections raised by other similarly situated landlords.

WHEREFORE, Weingarten respectfully objects to the Plan and requests such relief as the Court deems just and proper.

Dated: December 7, 2020

**SAUL EWING ARNSTEIN & LEHR LLP**

/s/ *John D. Demmy*
John D. Demmy (Bar No. 2802)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: 302-421-6848
Facsimile: 302-421-5881
E-mail: john.demmy@saul.com

*Attorneys for Weingarten Realty Investors, for itself and on behalf of its affiliates Weingarten Nostat, Inc. and WRI Summit REIT, LP*