# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>RUBIO'S RESTAURANTS, INC., *et al.*,<br><br>Debtors. [1] | Chapter 11<br><br>Case No. 20-12688 (MFW)<br><br>(Jointly Administered)<br><br>**Docket Ref. Nos. 14, 15, 224, 278, 280, 284, 299, and 305** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT AND (II) CONFIRMING THE SECOND AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF RUBIO'S RESTAURANTS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors")[2]

in the above-captioned chapter 11 cases (the "Chapter 11 Cases") having:

a.    commenced, on October 23, 2020, a prepetition solicitation of votes on the *Joint Prepackaged Chapter 11 Plan of Reorganization of Rubio's Restaurants, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 14] (as amended by the Amended Plan and the Second Amended Plan (each as defined below), and supplemented by the Plan Supplement (as defined below) and, as may be further amended, modified, and supplemented from time to time, the "Plan")[3] by distributing[4] to Holders of Class 3 Secured Loan Claims, the only class entitled to vote under the Plan (the "Voting Class"): (i) the Plan; (ii) the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Rubio's Restaurants, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 15] (the "Disclosure Statement"); and (iii) ballots, substantially in the form attached as **Exhibit 2** to the Scheduling Order (as defined herein) to vote on the Plan (the "Ballots");

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Rubio's Restaurants, Inc. (0303); MRRC Hold Co. (1242); Rubio's Restaurants of Nevada, Inc. (7609); and Rubio's Incentives, LLC (9359). The Debtors' mailing address is 2200 Faraday Avenue, Suite 250, Carlsbad, CA 92008.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan and Plan Supplement, as applicable.

[3]    The Plan is attached hereto as **Exhibit A**.

[4]    *See Affidavit of Service* dated October 26, 2020 [Docket No. 33] (the "Solicitation Affidavit").

b.    commenced, on October 26, 2020 (the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

c.    filed on the Petition Date, among other documents: (i) the Plan; (ii) the Disclosure Statement; (iii) *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (III) Approving Solicitation Procedures, (IV) Approving the Combined Hearing Notice, and (V) Granting Related Relief* [Docket No. 16] (the "Scheduling Motion"), which, among other things, scheduled the combined hearing on the adequacy of the Disclosure Statement and confirmation of the Plan for December 14, 2020 (the "Combined Hearing"); and (iv) the *Declaration of Angela Tsai on Behalf of Stretto Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Proposed Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 34] (the "Voting Declaration");

d.    operated their businesses during the Chapter 11 Cases as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code;

e.    filed on October 29, 2020, and served[5] on October 30, 2020, the *Notice of (I) Commencement of Chapter 11 Cases and (II) a Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan* [Docket No. 72] (the "Combined Hearing Notice"), which provided a summary of the key terms of the Plan, on all known Holders of Claims against and Interests in the Debtors, the United States Trustee for Region 3 (the "United States Trustee"), and certain other parties in interest, in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Scheduling Order (as defined herein);

f.    published[6] on November 9, 2020 the *Notice of Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan* (the "Publication Notice");

g.    filed on November 20, 2020 the *Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Rubio's Restaurants, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 178] (the "Amended Plan");

h.    filed on November 30, 2020 the *Plan Supplement for Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Rubio's Restaurants, Inc. and Its Debtor*

---

[5]    *See Affidavit of Service* dated November 6, 2020 and the supplements thereto [Docket Nos. 103, 130, and 207] (the "Combined Hearing Notice Affidavit").

[6]    *See Affidavit of Publication of the Notice of Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan* dated November 9, 2020 [Docket No. 107] (the "Publication Affidavit" and together with the Solicitation Affidavit and the Combined Hearing Notice Affidavit, the "Affidavits").

*Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 224] (as amended on December 14, 2020 [Docket No. 280], December 15, 2020 [Docket No. 284], December 21, 2020 [Docket No. 299], and December 22, 2020 [Docket No. 305], and as may be further amended, supplemented, or modified from time to time pursuant to the terms of the Plan, the "Plan Supplement");

i.    filed on December 14, 2020, the *Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Rubio's Restaurants, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 278] (the "Second Amended Plan");

j.    filed substantially contemporaneously herewith, the: (i) *Debtors' Memorandum of Law in Support of Entry of an Order (I) Approving the Debtors' Disclosure Statement and (II) Confirming the Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Rubio's Restaurants, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Brief"); (ii) *Declaration of Martin F. Lewis in Support of Confirmation of the Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Rubio's Restaurants, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Lewis Declaration"); and (iii) *Declaration of Melissa S. Kibler in Support of Confirmation of the Second Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Rubio's Restaurants, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Kibler Declaration"); and

k.    consolidated the Chapter 11 Cases for procedural purposes only in accordance with the *Order Directing Joint Administration of Related Chapter 11 Cases and Granting Related Relief* [Docket No. 49], as a result of which the Plan represents a separate plan of reorganization for each Debtor.

The Bankruptcy Court having:

a.    determined that: (i) it has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; (ii) approval of the Disclosure Statement and confirmation of the Plan are core proceedings under 28 U.S.C. § 157(b)(2); (iii) it has jurisdiction to (a) approve the adequacy of information contained in the Disclosure Statement and the Solicitation Procedures (as defined herein) and to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and (b) enter a final order (this "Confirmation Order"), consistent with Article III of the United States Constitution, with respect thereto; and (iv) venue in this District is proper pursuant to 28 U.S.C. §§1408 and 1409;

b.      reviewed the solicitation procedures regarding votes to accept or reject the Plan (the "Solicitation Procedures") as set forth in the Disclosure Statement and Scheduling Motion, which Solicitation Procedures were conditionally approved by the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (III) Approving Solicitation Procedures, (IV) Approving the Combined Hearing Notice, and (V) Granting Related Relief* [Docket No. 68] (the "Scheduling Order");

c.      held the Combined Hearing on December 14, 2020, at 2:00 p.m., prevailing Eastern Time, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

d.      reviewed the *Declaration of Melissa S. Kibler, Chief Restructuring Officer of the Debtors, in Support of the Chapter 11 Petitions and First Day Motions* [Docket No. 2], the Plan (with all modifications thereto, including those set forth herein), the Plan Supplement, the Disclosure Statement, the Ballots, the Confirmation Brief, the Kibler Declaration, the Lewis Declaration, the Affidavits, and all other pleadings, exhibits, statements, and comments filed by the Debtors in support of confirmation of the Plan;

e.      heard the statements, arguments, and any objections made at the Combined Hearing;

f.      considered all other materials and evidence filed, presented or submitted regarding approval of the Disclosure Statement and the Solicitation Procedures and Confirmation of the Plan, including all objections, statements, and reservations of rights, if any, made with respect thereto; and

g.      taken judicial notice of the papers and pleadings filed, all orders entered and all evidence proffered or adduced and all arguments made at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

**NOW, THEREFORE**, after due deliberation thereon and good cause appearing therefore,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      **Findings of Fact and Conclusions of Law**.  The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record of the Combined Hearing, constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact

constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      **Burden of Proof.**  The Debtors, as the proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

C.      **Solicitation.**  The Solicitation Procedures were: (a) appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases; (b) conducted in good faith; (c) complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and all other applicable non-bankruptcy rules, Laws, and regulations; and (d) are approved.  Modifications made or supplements to the Plan following the solicitation of votes thereon do not adversely change the treatment of the Claims held by the Voting Class and thus satisfy the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and no further solicitation is required.

D.      **Voting.**  As evidenced by the Voting Declaration and the Solicitation Affidavit, the procedures by which the Ballots for acceptance or rejection of the Plan were distributed and tabulated were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order and the Solicitation Procedures.

E.      **Notice of Transmittal, Mailing, and Publication of Materials**.  As is evidenced by the Voting Declaration and the Affidavits, the transmittal and service of the Plan, Plan Supplement, Disclosure Statement, Ballots, Combined Hearing Notice, as well as publication of the Publication Notice were adequate and sufficient under the circumstances of the Chapter 11 Cases, and all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to approval of the Disclosure Statement or confirmation of the

Plan) have been given due, proper, timely, and adequate notice in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order and the Solicitation Procedures, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

F.      **Plan Supplement**.    The filing and notice of the Plan Supplement, and any modifications or supplements thereto, were proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is or shall be required.    The Debtors are authorized to modify the Plan Supplement documents and any schedules, exhibits or amendments thereto, following entry of this Confirmation Order in a manner consistent with this Confirmation Order, the Plan, or applicable Law.

G.      **Plan Modifications.**    Pursuant to section 1127 of the Bankruptcy Code and subject to the provisions of the Plan relating to modifications, any modifications to the Plan since the commencement of solicitation constitute technical changes or changes with respect to particular Claims made with the consent of the Holders of or representatives of the Holders of such Claims or do not materially and adversely affect or change the treatment of any other Claims or Equity Interests.    Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.    The disclosure of any Plan modifications prior to or on the record at the Combined Hearing constitutes due and sufficient notice of any and all Plan modifications.    The Plan as modified shall constitute the Plan submitted for Confirmation.

27505093.2

H.      **Bankruptcy Rule 3016(a)**.  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the proponents of the Plan.

I.      **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))**.  As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

1.      **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))**.  The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code.  The Plan designates eight (8) Classes of Claims and Equity Interests.  The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and the Plan does not unfairly discriminate against any Class.  The Administrative Claims, Priority Tax Claims, Professional Fee Claims, DIP Claims, and Statutory Fees need not be classified.  Thus, the Plan satisfies sections 1122 and 1123(a)(l) of the Bankruptcy Code.

2.      **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))**.  Article III of the Plan specifies that Class 1, Class 2 and certain claims in Class 5 are Unimpaired under the Plan.  Thus, the requirement of section 1123(a)(2) of the Bankruptcy Code is satisfied.

3.      **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))**.  Article III of the Plan designates Class 3, Class 4, certain claims in Class 5, Class 6, Class 7, and Class 8 as Impaired under the Plan, and specifies the treatment of the Claims and Equity Interests in such Classes.  Thus, the requirement of section 1123(a)(3) of the Bankruptcy Code is satisfied.

4.      **No Discrimination (11 U.S.C. § 1123(a)(4))**.  The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest.  Thus, the requirement of section 1123(a)(4) of the Bankruptcy Code is satisfied.

5.      **Implementation of the Plan (11 U.S.C. § 1123(a)(5))**.  The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, without limitation: (a) the compromise or settlement of all Claims and Interests and controversies; (b) consummation of the Restructuring Transactions; (c) the continued vesting of the assets of the Debtors' Estates in the Reorganized Debtors; (d) the cancellation of certain existing agreements, obligations, instruments and Interests; (e) the entry into the Exit Facility; (f) the issuance of Reorganized Equity Interests; (g) establishment of the Claims Cash Pool Account and Release opt-in mechanism as set forth in Article IV of the Plan; (h) establishment of the Claims Bar Date (as defined herein) and the Governmental Unit Claims Bar Date; (h) the New Organizational Documents; and (i) the adoption of the Management Incentive Plan.  Thus, the requirements of section l 123(a)(5) of the Bankruptcy Code are satisfied.

6.      **Organizational Documents.**  Subject to Article V of the Plan, the Reorganized Debtors are authorized to enter into such agreements and amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan.

7.      **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))**.  The New Organizational Documents, include, among other things, a provision prohibiting the issuance of non-voting equity Securities.  Thus, section 1123(a)(6) of the Bankruptcy Code is satisfied.

8.      **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))**.  The Plan

Supplement discloses the individuals who will serve as the Reorganized Debtors' officers and

directors on the Effective Date.  The Plan and the New Organizational Documents, as applicable,

are consistent with the interests of the creditors and equity security holders and with public policy

with respect to the manner of selection of the Reorganized Debtors' officers and directors.  Thus,

section 1123(a)(7) of the Bankruptcy Code is satisfied.

9.      **Impairment/Unimpairment of Classes of Claims and Interests (11

U.S.C. 1123(b)(1))**.  Article III of the Plan (a) designates Class 1, Class 2, and certain claims of

Class 5 as Unimpaired, and (b) designates Class 3, Class 4, certain claims in Class 5, Class 6, Class

7, and Class 8 as Impaired.  Thus, section 1123(b)(1) of the Bankruptcy Code is satisfied.

10.     **Additional Plan Provisions (11 U.S.C. § 1123(b)(5)–(6))**.  The Plan's

additional provisions are appropriate, in the best interests of the Debtors and their Estates, and

consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local

Rules, including, without limitation, provisions for: (a) distributions to Holders of Claims; (b) the

disposition of Executory Contracts and Unexpired Leases; (c) the retention of, and the right to

commence and pursue any and all Causes of Action or Claims to the extent not expressly waived,

relinquished, exculpated, released, compromised, or settled in the Plan, the DIP Orders, or by a

Final Order; (d) the releases by the Debtors of certain parties; (e) the releases by certain third

parties; (f) the exculpation of certain parties; (g) the injunction of certain Claims and Causes of

Action in order to implement the discharge, release and exculpation provisions of the Plan; and

(h) the retention of Bankruptcy Court jurisdiction.  Thus, sections 1123(b)(5) and (6) of the

Bankruptcy Code are satisfied.

11. **The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**. The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically: (a) the Debtors are eligible debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code; (b) the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and (c) the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order and the Solicitation Procedures in transmitting the Plan, Plan Supplement, Disclosure Statement, Ballots, and related documents and notices, and in soliciting and tabulating the votes on the Plan. Thus, section 1129(a)(2) of the Bankruptcy Code is satisfied.

12. **Good Faith Proposal of the Plan (11 U.S.C. § 1129(a)(3))**. The Debtors have proposed the Plan (and all other documents necessary or appropriate to effectuate the Plan) in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases and the formulation of the Plan. The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the record of the Combined Hearing and other proceedings held in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate the successful reorganization of the Debtors. The Plan is the result of extensive arm's-length negotiations among the Debtors and their key stakeholders and is supported by their creditors and other parties in interest in the Chapter 11 Cases. Further, the Plan's classification, indemnification, exculpation, release, discharge, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 524, 1122,

1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary to the Debtors' successful reorganization. Thus, section 1129(a)(3) of the Bankruptcy Code is satisfied.

13.     **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**. Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable. Thus, section 1129(a)(4) of the Bankruptcy Code is satisfied.

14.     **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))**. The Debtors have disclosed in the Plan Supplement (a) the identity and the affiliation of certain individuals proposed to serve on or after the Effective Date as directors of the Reorganized Debtors and (b) the identity and the nature of compensation of any insider proposed to be employed or retained by the Reorganized Debtors on or after the Effective Date in a manner consistent with the interests of Holders of Claims or Interests and with public policy. Thus, section 1129(a)(5) of the Bankruptcy Code is satisfied.

15.     **No Rate Changes (11 U.S.C. § 1129(a)(6))**. The Plan does not provide for any rate change that requires regulatory approval. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable.

16.     **Best Interests of Creditors (11 U.S.C. § 1129(a)(7))**. Each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. The liquidation analysis attached as **<u>Exhibit B</u>** to the Disclosure Statement and the other evidence proffered or adduced at the Combined Hearing and

in the Kibler Declaration: (a) is reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that Holders of Allowed Claims and Interests in every Class will recover as much or more under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Thus, the "best interests" test under section 1129(a)(7) of the Bankruptcy Code is satisfied.

17.     **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))**.  Class 1, Class 2, and certain claims in Class 5 are left Unimpaired under the Plan, and are therefore conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Class 3 is Impaired and has voted to accept the Plan in accordance with the Bankruptcy Code.  Class 4 is Impaired and deemed to reject the Plan; *provided, however*, that pursuant to the settlement set forth in the Plan, Holders of Class 4 Claims will be eligible to receive a distribution on account of Allowed Class 4 Claims in accordance with and subject to the requirements of Article IV of the Plan.  Class 6, Class 7, and Class 8, and certain claims in Class 5 are Impaired under the Plan and will not receive or retain any property on account of their Claims and thus, are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.   Thus, section 1129(a)(8) of the Bankruptcy Code is not satisfied; however, the Plan can nevertheless be confirmed pursuant to section 1129(b) of the Bankruptcy Code as described below.

18.     **Treatment of Unclassified Claims (11 U.S.C. § 1129(a)(9))**.   The treatment of Administrative Claims, Priority Tax Claims, Professional Fee Claims, DIP Claims

and Statutory Fees pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

19.     **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))**.  Class 3 is an Impaired Class of Claims that voted to accept the Plan, determined without including any acceptance of the Plan by any insider.  Thus, section 1129(a)(10) of the Bankruptcy Code is satisfied.

20.     **Feasibility (11 U.S.C.§ 1129(a)(11))**.   The evidence supporting the feasibility of the Plan proffered or adduced by the Debtors at or before the Combined Hearing, including the financial projections set forth in __**Exhibit D**__ to the Disclosure Statement and the Kibler Declaration: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence or challenged in any of the objections to Confirmation; (d) establishes that the Plan is feasible and Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or the Reorganized Debtors, as applicable; and (e) establishes that the Debtors or the Reorganized Debtors, as applicable, will have access to sufficient funds and financial resources, which will enable them to meet their obligations under the Plan.  Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

21.     **Payment of Fees (11 U.S.C. § 1129(a)(12))**.  Pursuant to Article II of the Plan, all fees payable under 28 U.S.C. § 1930, plus any interest due and payable under 31 U.S.C § 3717, have been paid or will be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  Thus, section 1129(a)(12) of the Bankruptcy Code is satisfied.

22.     **Retiree Benefits (11 U.S.C. § 1129(a)(13))**.  As set forth in Article V of the Plan, on or after the Effective Date, all "retiree benefits" (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable Law. Thus, section 11 U.S.C. § 1129(a)(13) of the Bankruptcy Code is satisfied.

23.     **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(14)–(16))**.  Sections 1129(a)(13)–(16) of the Bankruptcy Code are inapplicable as the Debtors have no domestic support obligations, are not individuals, and are not nonprofit corporations (1129(a)(16)).

24.     **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b))**.  Class 4, Class 6, Class 7, Class 8 and certain claims of Class 5 (collectively, the "Rejecting Classes") are deemed to have rejected the Plan.  Pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that not all Impaired Classes have voted to accept the Plan.  All of the requirements of section l129(a) of the Bankruptcy Code, other than section 1129(a)(8), have been met.  With respect to the Rejecting Classes, the classification and treatment of such Claims and Equity Interests is proper pursuant to section 1122 of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable pursuant to section 1129(b)(l) of the Bankruptcy Code.  The treatment of such Holders is proper because all similarly situated Holders of Claims and Equity Interests will receive substantially similar treatment, and the Debtors have a valid rationale for the Plan's classification scheme and the disparate treatment, if any, provided for in different Classes.  There is no Class of Creditors or Equity Interests junior to the Rejecting Classes that will receive or retain property under the Plan on account of their Claims or Equity Interests.  Additionally, no Class of Claims or Equity Interests is receiving property under the Plan having a value greater than the Allowed amount of its Claims or Equity Interests.  Thus, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code

with respect to the Rejecting Classes and may be confirmed under section 1129(b) notwithstanding their rejection of the Plan.

25.     **Only One Plan (11 U.S.C. § 1129(c))**.  The Plan is the only chapter 11 plan currently proposed in the Chapter 11 Cases.  Thus, section 1129(c) of the Bankruptcy Code is satisfied.

26.     **Principal Purpose (11 U.S.C. § 1129(d))**.  The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit has objected to the confirmation of the Plan on any such grounds.  Thus, section 1129(d) of the Bankruptcy Code is satisfied.

J.     **Satisfaction of Confirmation Requirements.**  Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Plan and the Debtors, as applicable, satisfy all of the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

K.     **Good Faith Solicitation (11 U.S.C. § 1125(e)).**  Based on the record before the Bankruptcy Court in these Chapter 11 Cases, including evidence presented at the Combined Hearing, the Debtors, the Investor, the Consenting Secured Lenders, the Prepetition Agent, the DIP Agent and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and any applicable Law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and, therefore, are

not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the

violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or

rejections of the Plan or the offer, issuance, sale, or purchase of the securities offered and sold

under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy

Code and, to the extent such parties are listed therein as Exculpated Parties, the exculpation

provisions set forth in Article IX of the Plan.

L.    **Valuation.**    The valuation analysis (the "<u>Valuation Analysis</u>") attached as

**<u>Exhibit C</u>** to the Disclosure Statement and the other evidence proffered or adduced at the

Combined Hearing and in the Lewis Declaration, including the estimated post-emergence

enterprise value of the Reorganized Debtors, are reasonable and credible.  All parties in interest

have been given the opportunity to challenge the Valuation Analysis.  The Valuation Analysis is

reasonable, persuasive, and credible as of the date such analysis was prepared, presented, or

proffered, and uses reasonable and appropriate methodologies and assumptions.

M.    **Plan Documents.**    The terms of the Plan, including, without limitation, the Plan

Supplement, and all exhibits and schedules thereto, and all other documents filed in connection

with the Plan, or executed or to be executed in connection with the transactions contemplated by

the Plan and the Plan Supplement, including the Restructuring Transactions, the Exit Facility

Documents, and all amendments and modifications of any of the foregoing made pursuant to the

provisions of the Plan governing such amendments and modifications (collectively, the "<u>Plan</u>

<u>Documents</u>") are incorporated by reference, are approved in all respects, and constitute an integral

part of this Confirmation Order.

N.    **Binding and Enforceable.**    The Plan and the Plan Documents have been negotiated

in good faith and at arm's length and, subject to the occurrence of the Effective Date, shall bind

any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy Law.

O.    **Issuance of Reorganized Equity Interests.**  Issuance of the Reorganized Equity Interests is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The Debtors or Reorganized Debtors are authorized, without further approval of this Bankruptcy Court or any other party, to issue the Reorganized Equity Interests in accordance with the Plan and to execute and deliver, as applicable, all agreements, documents, instruments, and certificates relating thereto.

P.    **Exit Facility.**  The Exit Facility is an essential element of the Plan, and entry into the Exit Facility Documents is in the best interests of the Debtors, their Estates, and the Holders of Claims against and Equity Interests in the Debtors and their Estates and is necessary for Confirmation and Consummation of the Plan. The Debtors have exercised reasonable business judgment in determining to enter into the Exit Facility Documents and have provided sufficient and adequate notice of the material terms of the Exit Facility Documents, which material terms were filed as part of the Plan Supplement. The terms and conditions of the Exit Facility Documents included in the Plan Supplement are fair and reasonable, and were negotiated in good faith and at arm's length. All other contracts, instruments, agreements, and documents to be executed and delivered in connection with the Exit Facility Documents, and any credit extended to the

Reorganized Debtors pursuant to the Exit Facility Documents is deemed to have been extended, issued, and made in good faith and for legitimate business purposes and is deemed not to constitute a fraudulent conveyance or fraudulent transfer.

Q.    On the Effective Date, all Liens and security interests granted pursuant to, or in connection with the Exit Facility Documents (a) shall be valid, binding, perfected, enforceable first priority Liens and security interests in the property subject to a security interest granted by the applicable Reorganized Debtors pursuant to the Exit Facility Documents, with the priorities established in respect thereof under applicable non-bankruptcy Law and any applicable intercreditor agreements, and (b) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination.  The Exit Agent is authorized to file, with the appropriate authorities, financing statements, amendments thereto, or assignments thereof and other documents, including mortgages or amendments or assignments thereof in order to evidence the first-priority Liens and security interests granted in connection with the Exit Facility Documents; *provided*, for the avoidance of doubt, no Liens or security interests securing the Exit Facility or otherwise granted in accordance or connection with the Exit Facility Documents shall attach to or encumber the assets in the Deferred Compensation Plan.

R.    **Assumption or Rejection of Executory Contracts and Unexpired Leases.**  The Debtors have exercised reasonable business judgment in determining whether to assume or reject their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, Article V of the Plan, and the Plan Supplement.  Each assumption or rejection of an Executory Contract or Unexpired Lease pursuant to Article V of the Plan and the Assumed Executory Contracts and Unexpired Leases Schedule, as amended, shall be legal, valid, and binding upon the Reorganized Debtors and their assignees or successors and all non-Debtor parties

(and their assignees or successors) to such Executory Contracts or Unexpired Leases, all to the same extent as if such assumption or rejection had been effectuated pursuant to an order of the Bankruptcy Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.  The Reorganized Debtors shall not have any obligations with respect to any Executory Contracts or Unexpired Leases rejected pursuant to this Confirmation Order or a prior Order of this Bankruptcy Court, nor shall the Reorganized Debtors have any obligations with respect to any Executory Contracts or Unexpired Leases that are terminated or expire by their own terms prior to the Effective Date and which, as a result, are no longer executory contracts subject to assumption or rejection under section 365 of the Bankruptcy Code.  The Debtors have cured, or provided adequate assurance that the Reorganized Debtors or their successors or assignees will cure, all defaults (if any) under or relating to each of the Executory Contracts and Unexpired Leases assumed (or assumed and assigned) under the Plan.  In addition, the Debtors have provided adequate assurance of future performance regarding each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned) under the Plan.

S.    **Discharge, Compromise, Settlement, Release, Exculpation, and Injunction Provisions.**  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the discharge, compromises, settlements, releases, exculpations, and injunctions set forth herein and in Article IX of the Plan.  Further, sections 105(a) and 1123(b) of the Bankruptcy Code permit the issuance of the injunctions and approval of the releases, exculpations, and injunctions set forth herein and in Article IX of the Plan.  Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Combined Hearing, the Court finds that the discharge, compromises, settlements, releases, exculpations, and injunctions set forth herein and in Article IX of the Plan are consistent with the Bankruptcy Code and applicable Law.

Further, the discharge, compromises, settlements, releases, exculpations, and injunctions contained herein and in Article IX of the Plan are integral components of the Plan. The discharge, compromises, settlements, releases, exculpations, and injunctions set forth herein and in Article IX of the Plan are hereby approved and authorized in their entirety.

T.    **Debtors' Releases.** The releases by the Debtors described in Section 9.3(a) of the Plan (the "Debtors' Releases") are an integral and necessary part of the Plan and represent a valid exercise of the Debtors' business judgment. The Debtors' Releases are fair and equitable, and in the best interests of the Debtors, the Debtors' Estates, and all Holders of Claims and Equity Interests. The Plan, including the Debtors' Releases, was negotiated at arm's-length by sophisticated parties represented by able counsel and financial advisors. The Debtors' Releases offer protection to parties that participated in the Debtors' restructuring efforts, by, among other things, providing postpetition and exit financing (which is necessary to finance the payments required by the Plan), actively supporting the Plan and the Chapter 11 Cases, and waiving substantial Claims and rights against the Debtors under the Plan. The Debtors' Releases for the Debtors' directors and officers are also appropriate in light of the shared identity of interests with the Debtors and their active participation in negotiations, meetings and other operations that facilitated the preservation and maximization of the value of the Debtors' estates. The scope of the Debtors' Releases are tailored to the facts and circumstances of the Chapter 11 Cases and appropriate in light of the value provided by the Released Parties.

U.    **Releases by Holders of Claims and Equity Interests**. The Bankruptcy Court has jurisdiction to consider the releases by Holders of Claims and Equity Interests described in Section 9.3(b) of the Plan (the "Third Party Releases"). The Third Party Releases are: (a) consensual; (b) an integral and necessary part of the Plan; (c) given in exchange for the good and valuable

consideration provided by the Released Parties (including use of cash proceeds to be made available through the exit financing to fund the Claims Cash Pool Account); (d) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third Party Releases; (e) materially beneficial to, and in the best interests of, the Debtors, their estates and their stakeholders; (f) fair, equitable, and reasonable; (g) narrowly tailored to the facts and circumstances of the Chapter 11 Cases; (h) given and made after due notice and opportunity for a hearing; (i) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Releases against any of the Released Parties; and (j) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

V.     Like the Debtors' Releases, the Third Party Releases are an integral and necessary part of the Plan  and are critical in incentivizing the Released Parties to support the Plan (including by providing the funding to make the payments required by and contemplated in the Plan) and in avoiding potentially significant and time-consuming litigation.  The Third Party Releases appropriately offer protections to parties that meaningfully participated in the Debtors' restructuring efforts and supported the Plan.  The Holders of Class 3 Secured Loan Claims have agreed to provide funding from property that otherwise would have been payable to the Holders of Class 3 Secured Loan Claims under the Plan in an amount not less than $650,000 and not more than $1,000,000.  The Investor has agreed to invest funds in and to the Reorganized Debtors which is an integral part of the Plan and the restructuring of the Debtors.  The Third Party Releases are a valid exercise of the Debtors' business judgment, and are in the best interests of the Debtors and their estates.  The Plan, Plan Supplement and Disclosure Statement provided appropriate and specific disclosure and notice with respect to the Claims and Causes of Action that are subject to the Third Party Releases, as well as the opportunity to Holders of Allowed General Unsecured

Claims to opt-in to the Releases.  Thus, in light of, among other things, the value provided by the Released Parties and the critical nature of the Third Party Releases to the Plan, the Third Party Releases are appropriate.

W.    **Exculpation.**  The exculpation provisions set forth in Section 9.4 of the Plan (the "Exculpation") were proposed in good faith and are essential to the Plan.  The record in these Chapter 11 Cases fully supports such Exculpation, which is appropriately tailored to protect the Exculpated Parties from inappropriate litigation and to exclude actions determined by Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

X.    **Injunction.**  The injunction provisions set forth in Section 9.5 of the Plan (the "Injunction") are necessary to implement, preserve, and enforce the Debtors' discharge, the Debtors' Releases, the Third Party Releases, and the Exculpation, and are appropriately tailored to achieve this purpose.  The Injunction: (a) is within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, their Estates, and their stakeholders; (e) is important to the overall objectives of the Plan; and (f) is consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable Law.  The record of the Combined Hearing and the Chapter 11 Cases is sufficient to support the Injunction.

Y.    **Retention of Jurisdiction**.  The Bankruptcy Court may retain jurisdiction and power over the matters set forth in Article X of the Plan or section 1142 of the Bankruptcy Code.

Z.    **Waiver of Stay**.  Under the circumstances, it is appropriate that the 14-day stay imposed by the Bankruptcy Rules 3020(e) and 7026(a) be waived.

27505093.2

Based upon the foregoing findings, and upon the record made before the Bankruptcy Court at the Combined Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      **Findings of Fact and Conclusions of Law**. The recitals, findings of fact and conclusions of law above are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.

2.      **Eligibility for Relief.**  The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

3.      **Combined Hearing on Approval of the Disclosure Statement and Confirmation of the Plan.**  It was appropriate to hold the Combined Hearing on the Debtors' request for approval of the Disclosure Statement and confirmation of the Plan under sections 105(d)(2)(B)(vi) and 1125(g) of the Bankruptcy Code, and Bankruptcy Rule 3018(b).

4.      **Approval of the Disclosure Statement.**  The Disclosure Statement is approved in all respects as containing "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) in accordance with section 1125 of the Bankruptcy Code.  Any and all objections and reservations of rights to the Disclosure Statement that have not been withdrawn, waived, or resolved prior to the Combined Hearing are hereby overruled on the merits.

5.      **Confirmation of the Plan.**  The requirements for confirmation set forth in sections 1129(a) and 1129(b), which include by reference sections 1122(a) and 1123(a)(1), of the Bankruptcy Code have been satisfied.  The Plan, attached hereto as **<u>Exhibit A</u>**, is confirmed pursuant to section 1129 of the Bankruptcy Code.  Any and all objections and reservations of rights

to the Plan that have not been withdrawn, waived, or resolved prior to the Combined Hearing are hereby overruled on the merits.   On the Effective Date, pursuant to sections 1123(a), 1141(a), and 1142 of the Bankruptcy Code, the Plan and the Plan Supplement shall be, and hereby are, valid, binding, and enforceable.

6.    **Notice of Confirmation Order and Effective Date.**   In accordance with Bankruptcy Rules 2002 and 3020(c), the Reorganized Debtors shall file with the Bankruptcy Court a notice, substantially in the form annexed hereto as **<u>Exhibit B</u>** (the "<u>Notice of Confirmation Order</u>"), informing parties in interest of, among other things, entry of the Confirmation Order and the occurrence of the Effective Date.   The Reorganized Debtors shall serve the Notice of Confirmation Order on all: (a) known Holders of Claims and Equity Interests; (b) parties that requested notice in accordance with Bankruptcy Rule 2002; and (c) other parties on whom the Combined Hearing Notice was served within 5 Business Days of the occurrence of the Effective Date.  The form of the Notice of Confirmation Order is hereby approved.  Notice need not be given or served to any Entity for whom any prior notices sent during these Chapter 11 Cases have been returned as undeliverable, unless the Debtors have been informed in writing by such Entity of that Entity's new address.   The notice described herein is adequate and appropriate and no other or further notice is necessary.

7.    **Claims Bar Dates.**  The Administrative Claims Bar Date, the Other Priority Claims Bar Date and the General Unsecured Claims Bar Date shall be established as the first Business Day that is the 45th day after the Effective Date (the "<u>Claims Bar Date</u>").  The Governmental Unit Claims Bar Date shall be established as the first Business Day that is the 180th day after the Petition Date (the "<u>Governmental Unit Claims Bar Date</u>").   Notice of the Claims Bar Date and Governmental Unit Claims Bar Date shall be provided in the Notice of Confirmation Order, and

service of the Notice of Confirmation Order as prescribed above shall constitute good, adequate, and sufficient notice in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Further, pursuant to Bankruptcy Rule 2002(f), the Debtors shall publish notice of the Claims Bar Date and Governmental Unit Claims Bar Date, substantially in the form attached hereto as **Exhibit C** (the "Claims Bar Date Publication Notice"), in one national publication as soon as reasonably practicable after the Effective Date.  The Claims Bar Date Publication Notice is hereby approved and shall constitute good, adequate and sufficient publication notice of the Claims Bar Date and Governmental Unit Claims Bar Date.   The Reorganized Debtors and the General Unsecured Claims Administrator shall have 120 days after the applicable bar date to object to Claims, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.

8.      **General Unsecured Claims Administrator.**   The General Unsecured Claims Administrator, as set forth in the Plan, shall be Scott Cousins.

9.      **Omission of Reference to Particular Plan Provisions.**  The failure to specifically describe any particular provision of the Plan or the Plan Documents in this Confirmation Order shall not diminish or impair the effectiveness of such provision, and such provision shall have the same validity, binding effects, and enforceability as every other provision of the Plan and the Plan Documents.

10.      **Deemed Acceptance of the Plan as Modified.**  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to accept the Plan, including any modifications made pursuant to the terms of the Plan after solicitation and prior to entry of this Confirmation Order.

11.     **Compromise and Settlements Under the Plan.**  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classifications, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests, Causes of Action, and controversies resolved under the Plan, and the entry of this Confirmation Order constitutes the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.  Other than as specifically set forth in the Plan, the Plan is deemed a motion to approve the good-faith compromise and settlement of all such Claims, Equity Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation Order constitutes the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Article IV and VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Equity Interests (as applicable) in any Class shall be final.

12.     **Restructuring Transactions.**  On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be reasonably necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan and the Plan Supplement, including:  (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable Law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent

with the terms of the Plan; (c) the filing of appropriate certificates of formation or incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable Law; and (d) all other actions that the Reorganized Debtors reasonably determine are necessary or appropriate.  For the purposes of effectuating the Plan, none of the Restructuring Transactions contemplated herein shall constitute a change of control under any agreement, contract, or document of the Debtors.

13.     The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Debtors or Reorganized Debtors or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

14.     **Corporate Action.**  On the Effective Date, all actions contemplated by the Plan, the Plan Supplement, and the Restructuring Transactions shall be deemed authorized and approved in all respects, regardless of whether taken before, on, or after the Effective Date, including: (a) the selection of the directors and officers of each of the Reorganized Debtors; (b) the distribution of the Reorganized Equity Interests as provided herein or in the Plan Supplement Documents; (c) the execution and entry into the Exit Facility Documents; and (d) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date) or Restructuring Transactions, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any

requirement of further action by the security holders, members, managers, directors, or officers of the Debtors or the Reorganized Debtors or otherwise.

15.     On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, operating agreements, and instruments contemplated by the Plan and the Plan Supplement (or necessary or desirable to effect the transactions contemplated by the Plan and the Plan Supplement) in the name of and on behalf of the Reorganized Debtors, including the Reorganized Equity Interests, the Exit Facility Documents, and any and all agreements, documents, securities, and instruments relating to the foregoing.   The authorizations and approvals contemplated herein shall be effective notwithstanding any requirements under non-bankruptcy Law.

16.     **Vesting of Assets.**   Except as otherwise provided in the Plan or the Plan Documents, on the Effective Date, all Assets, including all Claims, rights, and Causes of Action, and any property acquired by the Debtors under or in connection with the Plan, shall vest in each respective Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, and interests.  Subject to the terms of the Plan, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Claims), Equity Interests, and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

17.     **Cancellation of Existing Securities and Agreements.**   On the Effective Date, except as otherwise specifically provided for in the Plan: (a) the obligations of the Debtors under any certificate, share, note, bond, agreement, indenture, purchase right, option, warrant, or other

27505093.2

instrument or document directly or indirectly evidencing or creating any indebtedness or obligation

of or ownership interest in the Debtors giving rise to any Claim or Equity Interest, including the

Prepetition Credit Agreement and the DIP Credit Agreement and their related security and

collateral documents (except such certificates, notes, or other instruments or documents evidencing

indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan, if

any) shall be cancelled, terminated and of no further force or effect, without further act or action,

and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder;

and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements,

certificates of designation, bylaws or certificate or articles of incorporation or similar documents

governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other

instruments or documents evidencing or creating any indebtedness or obligation of the Debtors

(except such agreements, certificates, notes, or other instruments evidencing indebtedness or

obligations of the Debtors that are specifically Reinstated or assumed pursuant to the Plan, if any)

shall be released and discharged.  Further, any Liens granted under the Final DIP Order attaching

to the assets in the Deferred Compensation Plan shall terminate as of the Effective Date.

       18.     Notwithstanding such cancellation and discharge, the DIP Facility Documents shall

continue in effect for purposes of allowing the DIP Agent to: (a) receive distributions from the

Debtors under the Plan and to make further distributions to the Holders of the DIP Claims on

account of such Claims; (b) enforce its rights, Claims and interests with respect to the DIP Lenders;

(c) enforce its rights to payment of fees, expenses, and indemnification obligations as against any

money or property distributable to Holders of DIP Claims, including any rights to priority of

payment with respect to the DIP Lenders; and (d) appear and be heard in the Chapter 11 Cases or

in any other proceeding, including to enforce any obligation owed to the DIP Agent or Holders of

DIP Claims under the Plan.  All indemnification or other protections provided to any Indemnified Person (as defined therein) pursuant to the provisions in Article X and Article XII of the DIP Credit Agreement shall survive confirmation of the Plan.

19.     **Deferred Compensation Plan.**  The Reorganized Debtors shall assume and otherwise Reinstate the Deferred Compensation Plan on the Effective Date.  Any Liens, charges, pledges, encumbrances or other security interests granted under the Final DIP Order attaching to the assets in the Deferred Compensation Plan shall terminate as of the Effective Date.  Further, no Liens, charges, pledges, encumbrances or other security interests securing the Exit Facility or otherwise granted in accordance or connection with the Exit Facility Documents shall attach to or encumber the assets in the Deferred Compensation Plan.

20.     **Approval of the Exit Facility and the Exit Facilities Documents.**  This Confirmation Order shall constitute approval of the Exit Facility and the Exit Facility Documents (including all transactions contemplated thereby, such as any supplementation or additional syndication of the Exit Facility, and all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein) and, subject to the occurrence of the Effective Date, authorization for the Reorganized Debtors to enter into and perform their obligations under the Exit Facility Documents and such other documents as may be reasonably required or appropriate, in each case, in accordance therewith.

21.     The Exit Facility Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are

reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law.

22.     On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents: (a) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents; (b) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents; and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy Law; *provided*, for the avoidance of doubt, no Liens or security interests securing the Exit Facility or otherwise granted in accordance or connection with the Exit Facility Documents shall attach to or encumber the assets in the Deferred Compensation Plan.  The Reorganized Debtors and the Entities granting such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other Law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter

27505093.2

cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

23.    Notwithstanding anything to the contrary herein, approval of the Exit Facility Documents shall not grant (x) the Exit Agent or Exit Lenders rights to access leased real property that are greater in any respect than the Reorganized Debtors' rights to grant such access under the applicable lease or similar contract covering real property, except to the extent such right to access is otherwise permitted under (and such right to access is undertaken in accordance with) applicable non-bankruptcy law, or (y) a lien or other security interest in, among other things, any rights or interests of the Reorganized Debtors in any lease or similar contract covering real property if the security interest or lien is prohibited or not permitted (a) as a matter of applicable non-bankruptcy law or (b) under the terms of such lease or other contract, and such prohibition or restriction has not been waived or the consent of the other party to such lease or other contract has not been obtained, unless the terms of such prohibition or restriction are overridden by applicable non-bankruptcy law.

24.    **Issuance of Reorganized Equity Interests.**    The Reorganized Company is authorized and empowered, without further approval of this Bankruptcy Court or any other party, to take such actions and to perform such acts as may be necessary, desirable, or appropriate to implement the issuance of the Reorganized Equity Interests in accordance with the Plan and Plan Supplement, to make all filings and recordings, and to obtain any and to execute and deliver all agreements, documents, securities, instruments, and certificates relating thereto.

25.    **Claims Cash Pool.**    On the Effective Date, in accordance with Article IV of the Plan, the Debtors or Reorganized Debtors shall establish and fund the Claims Cash Pool Account. As soon as practicable after the Claims Objection Deadline, the General Unsecured Claims

Administrator shall distribute such funds in accordance with Article IV of the Plan to Holders of

Allowed General Unsecured Claims that elect to opt-in and be bound by the Releases set forth in

Article IX of the Plan by appropriately completing and filing with Bankruptcy Management

Solutions, Inc. (d/b/a Stretto) (the "Notice and Claims Agent") an opt-in and proof of claim form,

substantially in the form attached as **Exhibit 1** (the "Opt-In Proof of Claim Form") to the Notice

of Confirmation Order, on or before the General Unsecured Claims Bar Date.  The Opt-In Proof

of Claim Form is hereby approved.

26.     The Claims Cash Pool Account: (a) shall not be and shall not be deemed property

of the Debtors or the Reorganized Debtors; (b) shall be held in reserve to fund distributions as

provided in Article IV of the Plan; and (c) no Liens, Claims, or Interests shall encumber the Claims

Cash Pool Account in any way (whether on account of the Exit Facility or other otherwise).  After

all distributions have been made in accordance with Article IV of the Plan, any and all Cash

remaining in the Claims Cash Pool Account shall be indefeasibly paid to the Reorganized Debtors.

27.     **Section 1145 Exemption from Registration.**  The issuance of the Reorganized

Equity Interests under the Plan or the Plan Supplement shall be exempt from registration under the

Securities Act and any other applicable securities Laws pursuant to section 1145 of the Bankruptcy

Code.  These Securities may be resold without registration under the Securities Act or other federal

securities Laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless

the Holder is an "underwriter" with respect to such Securities, as that term is defined in section

1145(b) of the Bankruptcy Code.

28.     **Exemption from Certain Transfer Taxes and Recording Fees.**  To the fullest

extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a

Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the

Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any Stamp or Similar Tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Unless the Bankruptcy Court orders otherwise, all sales, transfers and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

29.    **Directors and Officers of the Reorganized Debtors.**  The designation of the members of the Reorganized Board set forth in the Plan Supplement is approved and shall be effective as of the Effective Date without further action by any party.  Except to the extent that a member of the board of directors or board of managers, or the sole manager, as applicable, of a Debtor is designated in the Plan Supplement to serve as a director, manager or sole manager of such Reorganized Debtor on the Effective Date, the members of the board of directors or board of managers, or the sole manager, as applicable, of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the

Effective Date, and each such director, manager, or sole manager shall be deemed to have resigned or shall otherwise cease to be a director, manager or sole manager of the applicable Debtor on the Effective Date. Each of the directors, managers, sole managers and officers of each of the Reorganized Debtors shall serve pursuant to the terms of the applicable New Organizational Documents of such Reorganized Debtor and may be designated, replaced or removed in accordance with such New Organizational Documents.

30. **Management Incentive Plan.** On the Effective Date, the Management Incentive Plan shall be deemed adopted by the Reorganized Board to grant select members of the management team of the Reorganized Company and its subsidiaries profits interests as described in the Plan Supplement.

31. **Effectuating Documents; Further Transactions.** Prior to, on, and after the Effective Date, the Debtors and Reorganized Debtors and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, the Exit Facility Documents, the New Organizational Documents, and any securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan and this Confirmation Order. This Confirmation Order shall, and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

32.     **Retained Causes of Action.**  Unless any Causes of Action or Claims against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, the DIP Orders, or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action or Claims in the ordinary course, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action and Claims shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such retained Causes of Action or Claims, and may exercise any and all rights in connection therewith.  For the avoidance of doubt, in no instance will any Cause of Action preserved include any Claim or Cause of Action with respect to, or against, a Released Party.

33.     No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Schedules, or the Disclosure Statement to any Claim or Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them.  All rights of the Debtors and Reorganized Debtors to prosecute any and all Claims or Causes of Action against any Entity are expressly preserved, except as otherwise expressly provided in the Plan.

34.     **Treatment of Executory Contracts and Unexpired Leases.**  All Executory Contracts and Unexpired Leases of the Debtors that are not otherwise assumed or rejected will be deemed rejected by the applicable Debtor or Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than: (a) those that are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (b) those that have been previously assumed or rejected pursuant to a Final Order by the Debtors prior to the

Effective Date; and (c) those that are the subject of a motion seeking assumption or rejection as of the Effective Date. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V but not assigned to a third party shall be deemed to be assigned to a Reorganized Debtor, and be fully enforceable by, the applicable contracting Reorganized Debtor(s) in accordance with the terms thereof, except as otherwise modified by the provisions of the Plan, or by any order of the Bankruptcy Court. The Debtors or Reorganized Debtors shall serve a notice within 5 Business Days of the Effective Date, substantially in the form attached hereto as **Exhibit D** ("Assumption Notice"), notifying counterparties to all known Executory Contracts and Unexpired Leases that will be assumed by the Debtors pursuant to the Plan and Plan Supplement.

35.     This Confirmation Order constitutes an order of the Bankruptcy Court: (a) approving the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts or Unexpired Leases, as described in the Plan and Plan Supplement, pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2); (b) providing that each assumption, assignment, or rejection, as the case may be, is in the best interest of the Reorganized Debtors, their Estates, and all parties in interest in the Chapter 11 Cases; and (c) providing that the requirements for assumption or assumption and assignment of any Executory Contract or Unexpired Lease to be assumed have been satisfied. Unless otherwise indicated, all assumptions or rejections of Executory Contracts or Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

36.     To the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such

provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

       37.     Any counterparty to an Executory Contract or Unexpired Lease that did not timely object to the proposed assumption or Cure Cost shall be deemed to have assented to such assumption or Cure Cost.  Any objections regarding (a) the amount of any Cure Cost, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (c) any other matter pertaining to assumption or assumption and assignment that was not resolved at the Confirmation Hearing or herein shall be heard and resolved by the Bankruptcy Court prior to the assumption or assumption and assignment becoming effective, and the applicable Cure Costs associated therewith (if any) shall be paid following entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment and shall not prevent or delay implementation of the Plan or Effective Date; *provided* that the Debtors may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; *provided, further,* that notwithstanding anything to the contrary herein, the Debtors reserve the right to either reject, any Executory Contract or Unexpired Lease within 30 days after the entry of a Final Order resolving an objection to assumption or

assumption and assignment, determining the Cure Cost under an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease.

38.    Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Cost, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment.  Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

39.    Unless otherwise provided by a Bankruptcy Court order, Proofs of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases, if any, pursuant to the Plan or otherwise must be filed with the Notice and Claims Agent by the General Unsecured Claims Bar Date.  Proofs of Claim arising from the rejection or repudiation of the Debtors' Executory Contracts and Unexpired Leases, if any, that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Reorganized Debtor without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court.  All Allowed Claims arising from the rejection of the Debtors' Executory Contract and Unexpired Leases, if any, shall constitute General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

40.     Except as otherwise provided in the Plan or the Plan Supplement and except for any equity-based compensation or incentive plans, on and after the Effective Date, the Reorganized Debtors may, but are not required to, honor in the ordinary course of business any employee benefit plans (as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974) and any other contracts, agreements, policies, programs, and plans for, among other things, employment, compensation, health care, disability and other welfare benefits, deferred compensation benefits, severance policies and benefits, retirement benefits, workers' compensation insurance and accidental death and dismemberment insurance that as of immediately prior to the Petition Date are, and as of immediately prior to the Effective Date continue to be, sponsored, maintained, or contributed to by any of the Debtors for the directors, officers, employees and other service providers of any of the Debtors who served in such capacity at any time; *provided, however*, that notwithstanding the foregoing, the Reorganized Debtors shall assume and otherwise Reinstate the Deferred Compensation Plan on the Effective Date.  Nothing contained herein shall entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such expired benefit plan or alleged entitlement under any such expired benefit plan. Nothing herein shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, Claims, Causes of Action, or other rights with respect to any benefit plan, whether expired or unexpired.

41.     Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or in any notice related thereto, the Employee Benefits Agreements (as defined in the *Objection of Cigna to Disclosure Statement and Amended Joint Prepackaged Chapter 11 Plan of Reorganization* [Docket No. 252] ("Cigna Objection")) through which Cigna Behavioral Health, Inc. and Life Insurance Company of North America provide insurance, and insurance-related

services for Debtors' employee benefits plan, shall be assumed under the Plan, and, in lieu of cure, all obligations due and unpaid under the Employee Benefits Agreements accruing prior to the Effective Date shall be Unimpaired and Reinstated and nothing in this Confirmation Order or section 365 of the Bankruptcy Code shall affect such obligations. This fully resolves the Cigna Objection.

42.    Except as otherwise provided in the Plan, neither (a) the Debtors' emergence from chapter 11 of the Bankruptcy Code as contemplated by the Plan nor (b) the consummation of the transactions provided in the Plan (or otherwise contemplated by the Restructuring Transactions and the Plan to occur prior to or on or about the Effective Date), in each case alone or together with any other event, will: (i) entitle any current or former director, officer, employee or other service provider of any of the Debtors to any payment or benefit; (ii) accelerate the time of payment or vesting or trigger any payment or funding of compensation or benefits under, or increase the amount payable or trigger any other obligation under, any benefit plan or expired benefit plan; or (iii) limit or restrict the right of the Debtors or Reorganized Debtors to merge, amend or terminate any benefit plan, in each case including as a result of a "change in control" or similar provision or as a result of giving rise to any person to terminate his or her service with the Debtors or Reorganized Debtors for "good reason" or similar provision.

43.    All insurance policies pursuant to which any Debtor has any obligations in effect as of the Effective Date shall be deemed and treated as Executory Contracts pursuant to the Plan and shall be assumed and assumed and assigned to the respective Reorganized Debtors and shall continue in full force and effect thereafter in accordance with such policy's respective terms.

44.    **Supplemental Cure and Assumption Notice.** The Debtors shall file an amended notice of assumption and proposed Cure Costs with respect to the contracts and leases identified

in Note 3 for "Executory Contracts and Other Leases" and Note 5 for "Leases of Non-Residential

Real Property" at Exhibit F of the fourth Plan Supplement filed on December 21, 2020 [Docket

No. 299]. Parties receiving that Cure Note shall receive 14 days to object to the assumption of the

applicable executory contracts or the adjusted cure amount for the applicable lease of non-

residential real property. Any objection timely filed shall be treated as a dispute under Section

5.2(b) of the Plan, and assumption or rejection of such agreement shall be determined in

accordance with such Section 5.2(b) of the Plan. If no objection is timely filed, the applicable

contract shall be treated as assumed in accordance with the Plan.

     45.    **General Landlord Objections.** Notwithstanding anything to the contrary in the

Plan or this Confirmation Order, the following terms shall apply with respect to the leases of non-

residential leases of real property with the Objecting Landlords (as defined below) that are listed

on the Assumed Executory Contracts and Unexpired Leases Schedule.

     A.    Except as otherwise agreed by the counterparty to the applicable Unexpired
Lease, nothing in the Plan or in this Confirmation Order shall modify the
Debtors' or Reorganized Debtors' obligation to pay: (1) amounts owed or
accruing under an assumed Unexpired Lease that have not yet been billed
in accordance with the parties' ordinary course of business, were billed but
not yet due as of the Confirmation Date or were not yet required to be billed
under the assumed Unexpired Lease as of the Confirmation Date, for
common area maintenance, insurance, taxes, and similar charges, and any
regular or periodic adjustments and reconciliations of such charges
provided for under the terms of the Unexpired Lease, whether accruing prior
to or after the effective date of assumption of such Unexpired Lease, to the
extent such charges would become due, either in the parties' ordinary course
of business or in accordance with the terms of the Unexpired Lease; (2) any
percentage rent that has accrued but is not yet due to be paid under an
assumed Unexpired Lease; (3) any other obligations, including
indemnification obligations (if any) that arise from third-party claims
asserted with respect to or arising from the Debtors' use and occupancy of
the premises prior to the Effective Date for which the Debtors had a duty to
indemnify such Objecting Landlord pursuant to any Unexpired Lease; (4)
any post-petition expenses arising under an Unexpired Lease that come due
under the Unexpired Lease and that are not in default so as to be included
in the cure amount that is agreed or consented to by the counterparty to the

Unexpired Lease; (5) rent and associated amounts that came due for the month of December 2020; and (6) any unpaid Cure Costs or post-assumption obligations arising under an assumed Unexpired Lease.

B.      Notwithstanding any of the releases, discharges, injunctions, exculpations, or waivers set forth in the Plan, nothing in the Plan or this Confirmation Order shall modify the rights, if any, of any counterparty to an Unexpired Lease to assert any right of setoff or recoupment that such counterparties may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, the ability, if any, of such counterparties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Leases with the Debtors or the Reorganized Debtors.

C.      "<u>Objecting Landlords</u>" means (i) River Park Properties II; (ii) Summit Hurley Plaza LLC; (iii) CH Realty VII/R Las Vegas Pebble, L.L.C.; (iv) CH Retail Fund VII/R San Diego Eastlake Terraces, L.P.; (v) SandTree Menifee, LLC; (vi) Lippow/Arcadia LLC; (vii) BPP Shops at LaJolla LLC; (viii) Excel Lake Pleasant, LLC; (ix) De Rito/Kimco Riverview, LLC; (x) Kimco Realty Corp; (xi) GLE-III, LLC; (xii) PK II Anaheim Plaza, LP; (xiii) EDH Waterfront, LLC; (xiv) Fashion Valley Mall, LLC; (xv) Orange City Mills L.P.; (xvi) Shops at Mission Viejo, LLC; (xvii) Roseville PH, LLC & Convoy Roseville, LLC; (xviii) UTC Venture LLC; (xix) Eastlake Commercial 2007 LLC; (xx) Shapell Socal Rental Properties, LLC; (xxi) Cole MT San Jose CA, LP; (xxii) Scripps REG, LLC; (xxiii) MCD-RC CA-El Cerrito, LLC; (xxiv) MCD-RC CA-Amerige, LLC; (xxv) FW CA-Brea Marketplace, LLC; (xxvi) MMM West, Inc.; (xxvii) Vestar California XVII, LLC; (xxviii) Gershman Properties Chula Vista, LLC; (xxix) Gershman Properties, LLC; (xxx) Riverside Village, LLC, Univillage, LP, Napa Equity, LLC; (xxxi) 151 West Mineral Avenue Owner, LLC; (xxxii) Acadia Realty Limited Partnership; (xxxiii) Brixmor Property Group, Inc.; (xxxiv) Brookfield Properties Retail; (xxxv) Citivest Commercial Investments, LLC; (xxxvi) GEM Realty Capital, Inc.; (xxxvii) Regency Bressi, LLC; (xxxviii) Starwood Retail Partners, LLC; (xxxix) The Macerich Company; (xl) West Valley Properties, Inc.; (xli) Montalvo Square Associates, LLC; (xlii) Weingarten Nostat, Inc.; (xliii) WRI Summit REIT, LP; and (xliv) Carlsbad Premium Outlets, LLC.

46.      **Amendments to Assumed Contract and Unexpired Lease Schedule.**  The

Debtors may add or subtract Executory Contracts or Unexpired Leases to the Assumed Contract

and Unexpired Lease Schedule through and until the occurrence of the Effective Date; *provided*

*that*, notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors

will not amend the Assumed Executory Contracts and Unexpired Leases Schedule to add or

remove (as applicable) the following Unexpired Leases following the Confirmation Date:

| Store Number | Store Name | Store Location | Landlord Name |
|---|---|---|---|
| 7 | Encinitas | 252 N. El Camino Real, Suite 4, Encinitas, CA 92024 | Weingarten Nostat, Inc. |
| 152 | Carefree | 32415 N. Scottsdale Rd., Suite 105, Scottsdale, AZ 85266 | WRI Summit REIT, LP |
| 129 | SD-UTCFC | 4545 La Jolla Village Dr. Store No. FC7, San Diego, CA 92122 | UTC Venture LLC |
| 77 | Scripps Ranch | 10785 Scripps Poway Parkway Suite B, San Diego, CA 92131 | Scripps REG, LLC |
| 161 | El Cerrito | 5010 El Cerrito Plaza, El Cerrito, CA 94530 | MCD-RC CA-El Cerrito, LLC |
| 162 | Fullerton | 1935 W. Malvern Avenue, Fullerton, CA 92833 | MCD-RC CA-Amerige, LLC |
| 245 | Brea Marketplace | 835 E. Birch St., Brea, CA 92821 | FW CA-Brea Marketplace, LLC |
| 134 | Mira Mesa Market West | 10732 Westview Pkwy Suite 301, San Diego, CA 92126 | MMM West, Inc. |
| 56 | Rancho San Diego | 2959 Jamacha Rd. Ste. 20A, El Cajon, CA 92019 | Vestar California XVII, LLC |
| 59 | Tierra Corners | 1016 Tierra Del Rey Suite A, Chula Vista, CA 91910 | Gershman Properties Chula Vista, LLC |
| 261 | Breeze Hill Center | 620 Hacienda Dr., Vista, CA 92081 | Gershman Properties, LLC |
| 308 | Roseville Center | 1913 Douglas Blvd., Roseville, CA 95678 | Roseville PH, LLC and Convoy Roseville, LLC |
| 205 | Elk Grove Commons | 9624 Bruceville Rd., Suite 102, Elk Grove, CA 95757 | Elk Grove Owner LP |
| 148 | Gateway Plaza | 173 Plaza Drive, Suite 105, Vallejo, CA 94591 | Brixmor Property Owner II, LLC |
| 44 | Ocean View Plaza | 638 Camino De Los Mares Space #D-1, San Clemente, CA 92673 | California Property Owner I, LLC |
| 174 | Chula Vista Center | 555 Broadway St., Ste. 129, Chula Vista, CA 91910 | Chula Vista Center, LP |
| 16 | Temecula Town Center | 27480 Ynez Road, Suite 0-2, Temecula, CA 92591 | Temecula Town Center Owner, LLC |
| 13 | Beachwalk Center | 437 South Highway 101 Suite 117, Solana Beach, CA 92075 | GRE Beachwalk, LLC |

27505093.2

| 236 | Bressi Village | 2675 Gateway Rd. Ste. 104, Carlsbad, CA 92009 | Regency Bressi, LLC |
|---|---|---|---|
| 67 | Parkway Plaza | 419 Parkway Plz. Space No. 1-N-001, El Cajon, CA 92020 | Star-West Parkway Mall, LP |
| 164 | Chandler Fashion Mall | 3111 W. Chandler Blvd. Suite FF220, Chandler, AZ 85226 | TWC Chandler, LLC |
| 57 | Tatum Point | 4747 East Bell Road Suite 17, Phoenix, AZ 85032 | Tatum Venture, LLC |
| 25 | Shops at LaJolla Village | 8855 Villa LaJolla Village Drive, #404, San Diego, California | BPP Shops at LaJolla LLC |
| 239 | Lake Pleasant Pavilion | 24920 N. Lake Pleasant Parkway, #101, Peoria, AZ | Excel Lake Pleasant, LLC |
| 47 | Yorba Linda | 20355-F Yorba Linda Boulevard, Yorba Linda, CA 92886 | Eastlake Commercial 2007 LLC |
| 18 | Laguna Niguel | 27000 Alicia Pkwy., Ste. A, Laguna Niguel, CA 92677 | Shapell Socal Rental Properties, LLC |

47.    **Rejected Leases Procedures.**  For leases of non-residential real property that are rejected by operation of the Plan:

A.    The rejection shall be effective (the "Surrender Date") as of the later of (i) December 31, 2020 and (ii) the date the Debtors shall cease ongoing operations at the lease location (the "Premises"), vacate and tender possession of the Premises to the applicable landlord by (a) where feasible, sending, returning or otherwise making available to the landlord any keys, key codes, and alarm codes to the applicable Premises, or (b) relinquishing control of the Premises by notifying the landlord in writing (including by email) of the Debtors' surrender of the Premises and that the landlord may re-enter and re-key the Premises.

B.    Pursuant to section 554(a) of the Bankruptcy Code, any personal property, consisting primarily of miscellaneous inventory (e.g., ingredients and food packaging), fixtures, furniture, advertising displays, or other restaurant equipment, may remain at certain of the Premises (collectively, the "Personal Property") of the Debtors remaining at the Premises as of the Surrender Date shall be deemed abandoned as of the Surrender Date, free and clear of any interests of any party.  Any landlord with respect to the applicable Premises shall be free, notwithstanding the automatic stay, to use or dispose of the abandoned Personal Property without notice or liability to any party and without further notice or order of the Court, and the applicable landlord's rights, if any, to file a claim for the costs of disposal of such

property are fully reserved, as are the rights of any party in interest to object to such claims.  Any such claims must be filed by the General Unsecured Claims Bar Date.  Landlords shall not be liable to the Debtors or any third parties for the use or disposition of any and all such Personal Property remaining on the Premises after the Surrender Date.  To the extent the Debtors seek to abandon Personal Property or other assets that contain any "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Debtors' employees and/or customers, or any other individual (the "Confidential Information"), the Debtors shall take reasonable efforts to remove the Confidential Information from such property before abandonment.

48.    **United States Claims and Interests.**    Notwithstanding any provision to the contrary in the Plan, the Plan Supplement, this Order or any implementing Plan documents (for purposes of this Paragraph, collectively, the "Documents"):

A.    Nothing in the Documents shall: (1) discharge, release, enjoin, impair or otherwise preclude (a) any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code ("claim"), (b) any claim of the United States arising after the Effective Date, or (c) any liability of any entity or person, as the owner, lessor, lessee or operator of property or rights to property that such entity owns, operates or leases after the Effective Date, owed to any Governmental Unit (as defined by section 101(27) of the Bankruptcy Code) under police or  regulatory statutes or regulations; (2) release, nullify, preclude or enjoin the enforcement of any police or regulatory power; (3) modify the scope of Bankruptcy Code Section 502, including but not limited to the provisions pertaining to the estimation of claims; (4) authorize the assumption, sale, assignment or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts; *provided*, for the avoidance of doubt, with respect to the contract No. N00250-99-D-0101, and all related delivery orders and modifications thereunder, between the Debtors and the Navy Exchange Command (collectively, the "NEXCOM Contract"), the NEXCOM Contract shall be paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and the Reorganized Debtors shall comply with all applicable non-bankruptcy law, subject to any legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law; (iv) property, including but not limited to, intellectual property and patents, (v) leases, (vi) agreements or other interests of the federal government (collectively, "Federal Interests") without compliance by the Debtors and the Reorganized Debtors with all terms of the Federal Interests and with all applicable non-bankruptcy law; (5) be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the

assumption, transfer or assignment of any Federal Interests; (6) authorize the assumption, transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements, obligations and approvals under non-bankruptcy laws; (7) confer exclusive jurisdiction to the Bankruptcy Court with respect to claims, liabilities and Causes of Action of the United States, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (8) waive, alter or otherwise limit the United States' property rights with respect to the Federal Interests, including but not limited to, inventory, patents, intellectual property, licenses, and data; (9) release, exculpate, enjoin, impair or discharge any non-Debtor from any claim, liability, suit, right or Cause of Action of the United States; (10) affect any setoff or recoupment rights of the United States and such rights are preserved; (11) require the United States to file an administrative claim in order to receive payment for any liability described in Section 503(b)(1)(B) and (C) pursuant to Section 503(b)(1)(D) of the Bankruptcy Code; (12) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; (13) be construed as a compromise or settlement of any liability, claim, Cause of Action or interest of the United States; (14) be deemed to be an offer of judgment in accordance with Section 7.6 of the Plan; (15) require the prior authorization of the Bankruptcy Court or the Reorganized Debtors in order to file a claim or an amended claim of the United States; (16) require rejection damage claims relating to Federal Interests (a) to be filed by a deadline other than the later of (i) 180 days after the Petition Date or (ii) thirty days after the effective date of the rejection of such Federal Interest or (b) alter the treatment of such rejection claims under the Bankruptcy Code; or (17) cancel or release any PPP Loan Claim of the United States, provided that upon entry of this confirmation order, such claims are discharged in accordance with the Bankruptcy Code.

B.     Liens securing claims of the United States, if any, shall be retained until the secured claim, with interest (to the extent required to be paid under applicable law), is paid in full. Administrative expense claims of the United States allowed pursuant to the Plan or the Bankruptcy Code shall accrue interest and penalties as required by the Bankruptcy Code and applicable law until paid in full. Priority Tax Claims of the United States allowed pursuant to the Plan or the Bankruptcy Code will be paid in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code. To the extent allowed Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate set forth in Section 511 of the Bankruptcy Code. Moreover, nothing shall effect a release, injunction or otherwise preclude any claim whatsoever against any Debtor or any of the

Debtors' Estates by or on behalf of the United States for any liability arising a) out of a post-petition tax period for which a return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to a post-petition tax period. Further, nothing shall enjoin the United States from amending any claim against any Debtor or any of the Debtors' Estates with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a tax return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Any liability arising a) out of a post-petition tax period for which a return has not been filed or b) as a result of a pending audit or audit which may be performed with respect to a post-petition tax period shall be paid in accordance with the Bankruptcy Code. Without limiting the foregoing but for the avoidance of doubt, nothing contained in the Documents shall be deemed to bind the United States to any characterization of any transaction for tax purposes or to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Debtors' estates, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in the Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under Section 505 of the Bankruptcy Code.

49.    **Distributions.**  All distributions pursuant to the Plan shall be made in accordance with Article VI of the Plan, and such methods of distribution are approved. The Reorganized Debtors shall have no duty or obligation to make distributions to any Holder of an Allowed Claim unless and until such Holder executes and delivers, in a form acceptable to the Reorganized Debtors, any and all documents applicable to such distributions in accordance with Article VI of the Plan.

50.    **Compliance with Tax Requirements/Allocations.**  In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions reasonably necessary or appropriate to comply with such withholding

and reporting requirements, including (a) liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, (b) withholding distributions pending receipt of information necessary to facilitate such distributions including W-8 or W-9 forms and, in the absence of receipt of such information within a reasonable period of time, deeming such Claims to be waived without further Order of the Court, or (c) establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and encumbrances.

51.    **Disputed Claims.** Except as provided in Article IX of the Plan, each of the Reorganized Debtors after the Effective Date shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Equity Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan.

52.    Except as otherwise specifically provided in the Plan or order of the Bankruptcy Court, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the General Unsecured Claims Administrator shall have authority, subject to five (5) business days' notice to the Debtors and Reorganized Debtors: (1) to file, withdraw, or litigate to judgment objections to General Unsecured Claims and (2) to settle or compromise any Disputed General Unsecured Claim without any further notice to or action, order, or approval by the Bankruptcy Court. Any fees, expenses, or costs incurred by the General Unsecured Claims Administrator in connection with the foregoing, including professional fees or expenses, shall be paid exclusively from the Claims Cash Pool Account, and the General Unsecured Claims Administrator shall have no entitlement to payment from the Reorganized Debtors.

53.     The Reorganized Debtors shall have the sole authority: (a) to file, withdraw, or litigate to judgment objections to any Equity Interests or Claims other than General Unsecured Claims; (b) to settle or compromise any Disputed Claim other than General Unsecured Claims without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises of any Claim or Equity Interest without any further notice to or action, order, or approval by the Bankruptcy Court.

54.     **Conditions Precedent to Effective Date.**  The Plan shall not become effective unless and until all conditions set forth in Article VIII of the Plan have been satisfied or waived.

55.     **The Discharge, Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**  The discharge, Debtors' Releases, Third Party Releases, Exculpation, Injunction, and related provisions set forth in Article IX of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of the Bankruptcy Court or any other party.

56.     Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions of the Plan will be immediately effective on the Effective Date:

> **ARTICLE IX, SECTION 9.5: THE SATISFACTION, RELEASE AND DISCHARGE PURSUANT TO THIS ARTICLE IX OF THE PLAN SHALL ALSO ACT AS AN INJUNCTION AGAINST ANY ENTITY BOUND BY SUCH PROVISION AGAINST COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, OR RECOVER ANY CLAIM OR CAUSE OF ACTION SATISFIED, RELEASED, OR DISCHARGED UNDER THE PLAN OR THE CONFIRMATION ORDER TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED BY THE BANKRUPTCY CODE, INCLUDING, WITHOUT LIMITATION, TO THE EXTENT PROVIDED FOR OR AUTHORIZED BY SECTIONS 524 AND 1141 THEREOF.**

57.     Notwithstanding the effectiveness of the Plan Injunction provision set forth in Section 9.5 of the Plan, nothing in the Plan constitutes a prohibition on any existing right to proceed against the Debtors' applicable insurance policies and proceeds.

58.     **Dissolution of the Committee**.   On the Effective Date, the Committee shall dissolve and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases; *provided*, that the Committee's Professionals are authorized to prosecute fee applications following the Effective Date and include the fees and expenses incurred in preparation and filing of final fee applications with the Court as part of their Professional Fee Claims.  The Reorganized Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date and such amounts shall solely by paid from the Professional Fee Reserve Account and subject to the limitations set forth in the plan.

59.     **Professional Fee Claims.**  On the Effective Date, the Reorganized Debtors shall establish (if not already established) and fund the Professional Fee Account with Cash equal to the Professional Fee Reserve Amount; *provided* that any amounts remaining in the Funded Reserve Account shall be used to fund the Professional Fee Account.  The Professional Fee Account shall be maintained solely for the benefit of the Retained Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.  No Liens, Claims, or Equity Interests shall encumber the Professional Fee Account in any way.  The amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals from funds held in the Professional Fee Account when such Professional Fee Claims are Allowed by an Order of the Bankruptcy Court; *provided* that in the event the Professional Fee Reserve Amount is insufficient to satisfy the Professional Fee Claims, (x) each Retained

Professional shall receive its portion of the Professional Fee Account, allocated on the basis of the unused amounts set forth in the DIP Budget for such Retained Professional, from the Professional Fee Account and (y) the Reorganized Debtors shall be required to satisfy the Allowed amounts of the remainder of any outstanding Professional Fee Claims; *provided* that the Committee's Professionals shall not seek allowance of any Professional Fee Claims in excess of $400,000, the maximum amount of any Allowed Professional Fee Claims for the Committee's Professionals shall be $400,000, and the Committee's Professionals shall have no entitlement to payment from the Reorganized Debtors.  When all such Allowed amounts owing to Retained Professionals have been paid in full, any remaining amount in the Professional Fee Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court or any other Entity.  Notwithstanding anything in the foregoing to the contrary, in the event that amounts deposited into the Professional Fee Account for the Committee's Professionals and Debtors' Professionals in accordance with the DIP Budget are ultimately more than the amount needed to satisfy in full all of the Allowed Professional Fee Claims of the Committee's Professionals and the Debtors' Professionals, such excess shall be promptly transferred to the Claims Cash Pool Account in an amount such that the total aggregate amount in the Claims Cash Pool Account shall not exceed $1,000,000 to be administered in accordance with Article IV of the Plan.

60.    Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Reorganized Debtors shall pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Reorganized Debtors on or after the Effective Date in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court. The Reorganized Debtors shall pay, within 10 Business Days after submission of a detailed invoice

to the Reorganized Debtors, such reasonable Claims for compensation or reimbursement of expenses incurred by the Retained Professionals of the Reorganized Debtors.  From and after the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtor (as applicable) may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

61. **Substantial Consumption.**  Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

62. **Termination of Investigation Period.**  The Investigation Period (as defined in the DIP Orders) for all parties in interest is terminated as of the date set forth in the DIP Orders, and the stipulations, admissions, findings, and releases contained in the DIP Orders shall be binding on the Debtors' Estates and all parties in interest.

63. **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, among other things, jurisdiction to take the actions specified in Article X of the Plan.

64. **Immediate Binding Effect.**  Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims and Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are

parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases

65.    **Payment of Statutory Fees.**  All fees payable pursuant to section 1930(a) of Title 28 of the U.S. Code shall be paid when due and payable for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

66.    **Closing of Certain Chapter 11 Cases.**  Pursuant to section 350 of the Bankruptcy Code and Section 11.2 of the Plan, the closing of the Chapter 11 Cases of the Debtors, other than the Remaining Debtor (MRRC Hold Co., Case No. 20-12689), is hereby authorized.  As soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall submit a separate order to the Bankruptcy Court under certification of counsel closing the Chapter 11 Cases for all Debtors as of the Effective Date other than the Remaining Debtor.  The Reorganized Debtors may at any point file a motion to close the Chapter 11 Case for the Remaining Debtor.  All rights of the Reorganized Debtors are reserved to file a motion to reopen a closed Chapter 11 Case.  For procedural purposes only, matters concerning Claims may be heard and adjudicated in the Chapter 11 Case of the Remaining Debtor regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed.  Such administration of claims shall not cause a "substantive" consolidation of the respective Debtors' estates.  The closing of a Chapter 11 Case shall in no way prejudice the Reorganized Debtors' rights to object or otherwise contest a Proof of Claim filed against any of the Debtors or to commence or prosecute any action to which any of the Debtors may be party, or a claimant's right to receive distributions under the Plan.  The closing of a Chapter 11 Case shall not alter or modify the terms of the Plan.

67.    **Governing Law.**  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal Law, rule or regulation is applicable, or to the extent that an exhibit, supplement, or other document related to the Plan (including, without limitation, the DIP Facility Documents and the Exit Facility Documents), provides otherwise, the Plan shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof that would require application of the Law of another jurisdiction.

68.    **Severability.**  Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified except in accordance with Article X.A of the Plan; and (c) nonseverable and mutually dependent.

69.    **Controlling Document.**  In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and any of the Plan, the Disclosure Statement, or the Plan Supplement, the Confirmation Order shall control.

70.    **Extension of Injunctions and Automatic Stay.**  Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions

or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

71.     **Waiver of Stay of Confirmation Order.**  Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062), this Confirmation Order is effective immediately and not subject to any stay, sufficient cause having been shown.

Dated: December 22nd, 2020
    Wilmington, Delaware

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**

27505093.1