## Exhibit A

**Second Amended Joint Prepackaged Chapter 11
Plan of Reorganization of Rubio's Restaurants, Inc. and
Its Debtors Affiliates Pursuant to Chapter 11 of the Bankruptcy Code**

**IMPORTANT:  THE SOLICITATION MATERIALS ACCOMPANYING THE PLAN OF REORGANIZATION HAVE NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF 11 U.S.C. § 1125(a).  THE DEBTORS EXPECT TO SEEK AN ORDER OR ORDERS OF THE BANKRUPTCY COURT, AMONG OTHER THINGS: (1) APPROVING THE SOLICITATION OF VOTES AS HAVING BEEN IN COMPLIANCE WITH 11 U.S.C. § 1126(b); AND (2) CONFIRMING THE PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. § 1129.**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **RUBIO'S RESTAURANTS, INC.,** *et al.*,[1] | ) Case No. 20-12688 (MFW) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**SECOND AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF RUBIO'S RESTAURANTS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Gregg M. Galardi, Esq. (No. 2991)
Cristine Pirro Schwarzman, Esq. (*pro hac vice* pending)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000

M. Blake Cleary, Esq. (No. 3614)
Edmon L. Morton, Esq. (No. 3856)
Ryan M. Bartley, Esq. (No. 4985)
Betsy L. Feldman, Esq. (No. 6410)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600

*Counsel for Debtors and Debtors in Possession*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Rubio's Restaurants, Inc. (0303); MRRC Hold Co. (1242); Rubio's Restaurants of Nevada, Inc. (7609); and Rubio's Incentives, LLC (9359). The Debtors' mailing address is 2200 Faraday Avenue, Suite 250, Carlsbad, CA 92008.

27467227.1

# TABLE OF CONTENTS

Page

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION AND
COMPUTATION OF TIME ................................................................... 1

Section 1.1    Defined Terms. ................................................................... 1
Section 1.2    Rules of Interpretation and Computation of Time. ................................. 15

ARTICLE II. UNCLASSIFIED CLAIMS ............................................. 16

Section 2.1    Administrative Claims. ......................................................... 16
Section 2.2    Priority Tax Claims. ............................................................ 16
Section 2.3    Professional Fee Claims. ....................................................... 17
Section 2.4    DIP Claims. ..................................................................... 18
Section 2.5    Statutory Fees. ................................................................. 18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS .............................................................................. 19

Section 3.1    Classification of Claims. ...................................................... 19
Section 3.2    Class Identification. ........................................................... 19
Section 3.3    Treatment and Voting Rights of Claims and Equity Interests. ...................... 20
Section 3.4    Special Provision Governing Unimpaired Claims. ................................... 23
Section 3.5    Other Priority Claims. ......................................................... 23
Section 3.6    PPP Loan Claims. ............................................................... 24
Section 3.7    General Unsecured Claims. ...................................................... 24
Section 3.8    Voting; Presumptions; Solicitation. ............................................ 24
Section 3.9    Nonconsensual Confirmation. .................................................... 25
Section 3.10   Subordinated Claims. ........................................................... 25
Section 3.11   Intercompany Equity Interests. ................................................. 25
Section 3.12   No Waiver. ..................................................................... 25

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ................................... 25

Section 4.1    Compromise of Controversies. ................................................... 25
Section 4.2    Sources of Consideration for Plan Distribution. ................................ 26
Section 4.3    Restructuring Transactions. .................................................... 26
Section 4.4    Continued Corporate Existence. ................................................. 26
Section 4.5    Corporate Action. .............................................................. 27
Section 4.6    Vesting of Assets. ............................................................. 27
Section 4.7    Indemnification Provisions in Organizational Documents. ......................... 28
Section 4.8    Cancellation of Existing Securities and Agreements. ............................. 28
Section 4.9    Approval of the Exit Facility and the Exit Facility Documents. .................. 29
Section 4.10   Issuance of Reorganized Equity Interests. ...................................... 30
Section 4.11   Claims Cash Pool and Release Opt-In. ........................................... 30
Section 4.12   Exemption from Registration Requirements. ...................................... 31

27467227.1

i

Section 4.13   Organizational Documents..................................................................... 31
Section 4.14   Exemption from Certain Transfer Taxes and Recording Fees............................. 32
Section 4.15   Directors and Officers of the Reorganized Debtors............................................. 32
Section 4.16   Management Incentive Plan........................................................................ 32
Section 4.17   Effectuating Documents; Further Transactions. .................................................. 32
Section 4.18   Restructuring Expenses............................................................................. 33
Section 4.19   Retained Causes of Action........................................................................... 33

ARTICLE V.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
             LEASES .............................................................................................. 34

Section 5.1    Assumption and Rejection of Executory Contracts and Unexpired Leases. ........ 34
Section 5.2    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ....... 35
Section 5.3    Indemnification and Reimbursement Obligations. .............................................. 36
Section 5.4    Claims Based on Rejection of Executory Contracts and Unexpired Leases
               (if Any)................................................................................................. 36
Section 5.5    Contracts and Leases Entered Into After the Petition Date. ................................ 36
Section 5.6    Employee Compensation and Benefit Programs. ................................................ 36
Section 5.7    Insurance Policies. ..................................................................................... 37
Section 5.8    Reservation of Rights................................................................................ 37

ARTICLE VI.  PROVISIONS GOVERNING DISTRIBUTIONS ............................................... 38

Section 6.1    Distribution on Account of Claims and Equity Interests Allowed as of the
               Effective Date. .......................................................................................... 38
Section 6.2    Distribution on Account of Claims and Equity Interests Allowed After the
               Effective Date. .......................................................................................... 38
Section 6.3    Timing and Calculation of Amounts to Be Distributed. ...................................... 38
Section 6.4    Delivery of Distributions. ........................................................................... 39
Section 6.5    Distributions by Distribution Agent (if any)..................................................... 40
Section 6.6    Minimum Distributions. .............................................................................. 40
Section 6.7    Undeliverable Distributions. ........................................................................ 41
Section 6.8    Compliance with Tax Requirements/Allocations. .............................................. 41
Section 6.9    Surrender of Cancelled Instruments or Securities. ............................................. 42
Section 6.10   Claims Paid or Payable by Third Parties. ........................................................ 42

ARTICLE VII.  PROCEDURES FOR RESOLVING DISPUTED CLAIMS OR EQUITY
              INTERESTS ........................................................................................ 42

Section 7.1    Allowance of Claims and Equity Interests........................................................ 42
Section 7.2    Prosecution of Objections to Claims............................................................... 43
Section 7.3    Estimation of Claims and Equity Interests........................................................ 43
Section 7.4    Adjustment to Claims and Equity Interests Without Objection............................. 44
Section 7.5    Disallowance of Certain Claims. ................................................................... 44
Section 7.6    Offer of Judgment. .................................................................................... 44
Section 7.7    Amendments to Claims................................................................................ 45

27467227.1

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ......................... 45

Section 8.1    Conditions Precedent to the Effective Date. ....................................... 45
Section 8.2    Waiver of Conditions Precedent. ....................................................... 47
Section 8.3    Effect of Failure of Conditions Precedent. ......................................... 47
Section 8.4    Reservation of Rights.......................................................................... 47
Section 8.5    Substantial Consummation of Plan. .................................................... 47

ARTICLE IX. EFFECT OF PLAN CONFIRMATION .............................................. 48

Section 9.1    Binding Effect....................................................................................... 48
Section 9.2    Discharge of Claims and Termination of Equity Interests; Compromise
               and Settlement of Claims, Equity Interests, and Controversies........... 48
Section 9.3    Releases................................................................................................ 49
Section 9.4    Exculpation and Limitation of Liability. .............................................. 51
Section 9.5    Injunction. ............................................................................................ 52
Section 9.6    Setoffs and Recoupment. ..................................................................... 52
Section 9.7    Release of Liens. .................................................................................. 53
Section 9.8    Dissolution of Committee. ................................................................... 53

ARTICLE X. RETENTION OF JURISDICTION ........................................................ 53

ARTICLE XI. MISCELLANEOUS PROVISIONS....................................................... 55

Section 11.1    Immediate Binding Effect................................................................... 55
Section 11.2    Closing of Certain Chapter 11 Cases. ................................................ 56
Section 11.3    Payment of Statutory Fees. ................................................................ 56
Section 11.4    Amendments. ...................................................................................... 56
Section 11.5    Revocation or Withdrawal of Plan...................................................... 57
Section 11.6    Governing Law. ................................................................................... 57
Section 11.7    Successors and Assigns........................................................................ 57
Section 11.8    Severability. ........................................................................................ 57
Section 11.9    Controlling Document. ........................................................................ 58
Section 11.10   Filing of Additional Documents. ....................................................... 58
Section 11.11   Reservation of Rights. ........................................................................ 58
Section 11.12   Service of Documents. ........................................................................ 58
Section 11.13   Section 1125(e) of the Bankruptcy Code. .......................................... 61
Section 11.14   Tax Reporting and Compliance. .......................................................... 62
Section 11.15   Exhibits, Schedules, and Supplements................................................. 62
Section 11.16   Entire Agreement. ............................................................................... 62
Section 11.17   Allocation of Payments....................................................................... 62
Section 11.18   Conflicts.............................................................................................. 62

27467227.1

**SECOND AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN
OF REORGANIZATION OF RUBIO'S RESTAURANTS, INC. AND ITS
DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Rubio's Restaurants, Inc.; MRRC Hold Co.; Rubio's Restaurants of Nevada, Inc.; and Rubio's Incentives, LLC (each a "Debtor" and, collectively, the "Debtors") propose this second amended joint prepackaged plan of reorganization (the "Plan") for the resolution of the outstanding Claims against and Equity Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Equity Interests pursuant to the Bankruptcy Code. The Debtors seek to consummate the Restructuring Transactions on the Effective Date of the Plan. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Equity Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors.

Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, results of operations, historical financial information, projections and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan.

ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE STRONGLY ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.

## DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

Section 1.1    *Defined Terms.*

The following terms shall have the respective meanings specified below when used in capitalized form in the Plan:

1.    "*Accrued Professional Compensation*" means, at any date, all accrued fees and reimbursable expenses (including success fees) for services rendered by all Retained Professionals in the Chapter 11 Cases through and including such date, to the extent that such fees and expenses have not been previously paid and regardless of whether a fee application has been filed for such fees and expenses and to the extent not disallowed under a Final Order.

2.    "*Administrative Claims*" means any and all requests for payment of costs or expenses (other than DIP Claims) of the kind specified in Bankruptcy Code section 503(b) and entitled to priority under Bankruptcy Code section 507, including, but not limited to: (a) the actual

and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Bankruptcy Fees; and (c) Cure Costs.

3.      "*Administrative Claims Bar Date*" means the first Business Day that is the 45th day after the Effective Date.

4.      "*Affiliate*" means an affiliate as defined in section 101(2) of the Bankruptcy Code, including non-Debtor Entities.

5.      "*Allowed*" means, with respect to any Claim or Equity Interest, (a) any Claim or Equity Interest arising on or before the Effective Date (i) as to which no objection to allowance, priority, or secured status, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed by the applicable objection deadline, or (ii) as to which any objection has been determined in favor of the respective Holder by Final Order, but only to the extent allowed by Final Order; (b) any Claim or Equity Interest that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors or the Reorganized Debtors; (c) any Claim or Equity Interest as to which the liability of the Debtors or Reorganized Debtors, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (d) any Claim or Equity Interest expressly allowed hereunder; *provided* that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Equity Interests shall be subject to the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Reorganized Debtors shall retain all claims and defenses with respect to Claims.

6.      "*Assets*" means, with respect to any Debtor, all of such Debtor's right, title and interest of any nature in property of any kind, wherever located, including as specified in section 541 of the Bankruptcy Code.

7.      "*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule (as may be amended), if any, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Debtors pursuant to the Plan and which will be included in the Plan Supplement; *provided* that the Consenting Secured Lenders shall have approved any assumptions, rejections or modifications of material Executory Contracts and Unexpired Leases.

8.      "*Ballot*" means a ballot accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as may be amended.

10. "***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases or any proceeding within, or appeal of an order entered in, the Chapter 11 Cases.

11. "***Bankruptcy Fees***" means any and all fees or charges assessed against the Debtors' estates under section 1930 of title 28 of the United States Code.

12. "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 28 of the United States Code, the Official Bankruptcy Forms or the local rules of the Bankruptcy Court, together with any amendments made thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

13. "***Business Day***" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

14. "***Cash***" means the legal tender of the United States of America or the equivalent thereof.

15. "***Causes of Action***" means any and all actions, causes of action, suits, claims, Claims, interests, damages, remedies, demands, rights, debts, dues, sums of money, accounts, reckonings, rights to legal remedies, rights to equitable remedies, rights to payment, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, demands, obligations, liabilities, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, franchises and trespasses of any kind or character whatsoever of, or belonging to, the Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, matured, unmatured, suspected, unsuspected, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or indirectly or derivatively, in Law, equity or otherwise. For the avoidance of doubt, "Causes of Action" includes, but is not limited to, (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law; (b) the right to object to or otherwise contest Claims or Equity Interests; (c) Claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign Law fraudulent transfer or similar Claim.

16. "***Chapter 11 Cases***" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all Debtors, the jointly-administered cases pending for the Debtors in the Bankruptcy Court collectively.

17. "***Claim***" means a claim as defined in section 101(5) of the Bankruptcy Code against any Debtor, including Administrative Claims, Other Priority Claims and DIP Claims, in each case whether or not asserted.

18.    "***Claims Cash Pool***" means Cash, in amount equal to the lesser of (a) $1,000,000 and (b) the sum of (i) $650,000; ***plus*** (ii) the amount, if any, by which the aggregate amount of Allowed Professional Fee Claims of the Committee's Professionals are less than $400,000; ***plus*** (iii) the amount, if any, by which the aggregate amount of Allowed Professional Fee Claims of the Debtors' Professionals are less than $3,302,000; which Cash will fund the Claims Cash Pool Account and be distributed in accordance with the terms and conditions of the Plan.

19.    "***Claims Cash Pool Account***" means an account to be funded on the Effective Date in accordance with Article IV of the Plan.

20.    "***Claims Objection Deadline***" means the deadline to object to Claims, which shall be no less than 120 days after the Bar Date applicable to such Claim, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.

21.    "***Claims Register***" means the official register of Claims maintained by the Notice and Claims Agent.

22.    "***Class***" means a group of Claims or Equity Interests classified together pursuant to section 1122(a)(1) of the Bankruptcy Code.

23.    "***Committee***" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee.

24.    "***Confirmation***" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

25.    "***Confirmation Date***" means the date upon which the Confirmation Order is entered on the docket maintained by the Bankruptcy Court pursuant to Bankruptcy Rule 5003.

26.    "***Confirmation Hearing***" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan under section 1129 of the Bankruptcy Code.

27.    "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

28.    "***Consenting Secured Lenders***" means those certain Holders of Loan Claims holding more than 66.6% of the aggregate amount of all outstanding Loan Claims.

29.    "***Consenting Stakeholders***" means, collectively, the Consenting Secured Lenders and the Investor.

30.    "***Consummation***" means the occurrence of the Effective Date.

31.    "***Cure Cost***" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as

27467227.1

may be agreed upon by the parties under an Executory Contract or Unexpired Lease) and other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code.

32.     "*Debtor*" has the meaning set forth in the introductory paragraph of the Plan.

33.     "*Deferred Compensation Plan*" means (i) the Rubio's Restaurants, Inc. Deferred Compensation Plan, as amended and restated effective January 1, 2014, including any amounts payable pursuant to the terms thereof, and (ii) the Grantor Trust between First American Trust, FSB and Rubio's, dated as of January 1, 2018, including any and all assets held in such trust pursuant to the terms thereof.

34.     "*DIP Agent*" means GCI Capital Markets LLC, as sole agent under the DIP Facility, or any successor agents thereunder.

35.     "*DIP Budget*" means the consolidated weekly operating budget of the Debtors as set forth in the DIP Credit Agreement.

36.     "*DIP Claims*" means any and all Claims against any Debtor related to, arising out of, arising under, or arising in connection with the DIP Loans under the DIP Facility.

37.     "*DIP Credit Agreement*" means that certain credit agreement evidencing the DIP Facility by and among Rubio's, as borrower, Holdings, Rubio's Restaurants of Nevada, Inc. and Rubio's Incentives, LLC, as guarantors, the DIP Agent, and the DIP Lenders, including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith, as may be amended, modified or supplemented from time to time, in accordance with the terms thereof.

38.     "*DIP Facility*" means that superpriority, senior secured debtor in possession credit facility in an aggregate principal amount of up to $8 million, consisting of the DIP Loans.

39.     "*DIP Facility Documents*" means the DIP Credit Agreement together with all documentation executed or delivered in connection therewith as may be amended, modified or supplemented from time to time, in accordance with the terms and conditions set forth therein.

40.     "*DIP Lenders*" means those certain lenders party to the DIP Credit Agreement from time to time.

41.     "*DIP Loans*" means the $8 million in term loans to be provided pursuant to the DIP Credit Agreement.

42.     "*DIP Order*" means any orders entered by the Bankruptcy Court in these Chapter 11 Cases approving the DIP Facility.

43.   "***Disclosure Statement***" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as it may be amended from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable Law.

44.   "***Disclosure Statement Order***" means the order of the Bankruptcy Court approving the Disclosure Statement.

45.   "***Disputed***" means, with respect to any Claim or Equity Interest, except as otherwise provided herein, a Claim or Equity Interest that is not yet Allowed.

46.   "***Distribution Agent***" means, with respect to General Unsecured Claims, the General Unsecured Claims Administrator and, with respect to all other Claims, the Debtors or the Reorganized Debtors, or any Person designated by the Debtors or the Reorganized Debtors, in the capacity as distribution agent under the Plan.

47.   "***Distribution Date***" means the date on which Holders of Claims are eligible to receive distributions under the Plan.

48.   "***Effective Date***" means the date that is the first Business Day selected by the Debtors on which all conditions to the effectiveness of the Plan set forth in Article VIII hereof have been satisfied or waived in accordance with the terms of the Plan.

49.   "***Entity***" means an "entity" as defined in section 101(15) of the Bankruptcy Code, and includes, for the avoidance of doubt, a Person.

50.   "***Equity Holders Agreement***" means a stockholders agreement or limited liability company agreement, as applicable, with respect to the equity in the Reorganized Company, the governance of the Reorganized Company and the voting and transfer rights and obligations among the equity holders of the Reorganized Company, to be effective on the Effective Date, as may be amended, modified or supplemented from time to time.

51.   "***Equity Interest***" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, membership or limited liability company interests (whether certificated or uncertificated), or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto that existed immediately before the Petition Date.

52.   "***Estates***" means, as to each Debtor, the estate created for the Debtor pursuant to section 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Cases.

53.   "***Exculpated Parties***" means, collectively, in each case in its capacity as such: (a) the Debtors; (b) the Debtors' officers and directors serving after the Petition Date; (c) the Creditors' Committee; (d) each member of the Creditors' Committee in its capacity as such; and

(e) the Professionals, consultants or other advisors retained by the Debtors and the Creditors' Committee.

54.    "***Executory Contract***" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment or rejection under sections 365 or 1123 of the Bankruptcy Code.

55.    "***Exit Agent***" means the administrative and collateral agent for the Exit Lenders under the Exit Facility Credit Agreement or any successor agent thereof.

56.    "***Exit Conversion Amount***" means the amount of all obligations under the DIP Facility on the Effective Date.

57.    "***Exit Facility***" means the senior secured credit facility in an aggregate principal amount equal to $52 million as set forth in the Exit Facility Documents.

58.    "***Exit Facility Credit Agreement***" means that certain credit agreement by and among Rubio's, the other guarantors from time to time party thereto, the Exit Lenders, the Exit Agent, as administrative agent and collateral agent, and the other Entities party thereto from time to time.

59.    "***Exit Facility Documents***" means the Exit Facility Credit Agreement and all other related agreements, notes, certificates, documents and instruments, and all exhibits, schedules and annexes thereto, entered into or delivered in connection with the Exit Facility Credit Agreement, and as may be amended, modified or supplemented from time to time, in accordance with the terms and conditions set forth in the Exit Facility Documents (as applicable).

60.    "***Exit Lenders***" means those certain Prepetition Secured Lenders (together with their permitted assignees) and DIP Lenders, in their capacity as lenders under the Exit Facility Credit Agreement or their Affiliates.

61.    "***Exit Term Loans***" means the term loans issued under the Exit Facility.

62.    "***Final Order***" means, as applicable, an order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction, as applicable, which has not been reversed, vacated or stayed and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or motion for reargument or rehearing is pending, or as to which any right to appeal, petition for certiorari, reargue, or rehear has been waived in writing in form and substance satisfactory to the Debtors or, on and after the Effective Date, the Reorganized Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court, or other court of competent jurisdiction (as applicable) has been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing has been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing has expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable

state or provincial court rules of civil procedure, may be filed with respect to such order, ruling, or judgment shall not cause an order, ruling, or judgment not to be a Final Order.

63.    "***Footprint Notification Date***" means any time prior to the Confirmation Hearing.

64.    "***Funded Reserve Account***" means the funds held in trust pursuant to the DIP Facility Documents for purposes of funding the Carveout (as defined in the DIP Facility Documents).

65.    "***General Unsecured Claim***" means any unsecured Claim (other than an Administrative Claim, a DIP Claim, an Intercompany Claim, a Priority Tax Claim, or an Other Priority Claim) against one or more of the Debtors, including (a) Claims arising from the rejection of Unexpired Leases and Executory Contracts to which a Debtor is a party; (b) Claims arising from any litigation or other court, administrative, or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by a Debtor related thereto; (c) the Secured Lender Deficiency Claims; and (d) all PPP Loan Claims to the extent not forgiven.

66.    "***General Unsecured Claims Administrator***" means the Person or Persons designated by the Committee, in his or her or their capacity as distribution agent for Allowed General Unsecured Claims under the Plan; *provided* that any fees, expenses or other costs of the General Unsecured Claims Administrator shall be paid exclusively from the Claims Cash Pool Account, and the General Unsecured Claims Administrator shall have no entitlement to payment from the Reorganized Debtors.

67.    "***General Unsecured Claims Bar Date***" means the first Business Day that is the 45th day after the Effective Date.

68.    "***Governmental Unit***" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

69.    "***Governmental Unit Claims Bar Date***" means the first Business Day that is the 180th day after the Petition Date.

70.    "***Holder***" means the beneficial holder of any Claim or Equity Interest.

71.    "***Holdings***" means MRRC Hold Co., a Delaware corporation.

72.    "***Impaired***" means, with respect to a Claim or Equity Interest, such Claim or Equity Interest that falls within a Class of Claims or Equity Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

73.    "***Indemnification Obligation***" means a Debtor's obligation to indemnify, reimburse, or otherwise hold financially harmless its Indemnified Parties with respect to or based upon any act or omission taken or omitted in any of the relevant capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by such Debtor's respective

certificates of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date.

74.     "*Indemnified Parties*" means the Debtors' current and former directors, officers, managers, employees, attorneys, other professionals, and agents, and such current and former directors', officers', managers', and employees' respective Affiliates to the extent set forth herein, that were employed or served in such capacity on or after the Petition Date and that are entitled to be indemnified by the Debtors pursuant to, among other things, the Debtors' bylaws, certificates of incorporation (or other formation documents), board resolutions, employment contracts, or other agreements.

75.     "*Intercompany Claims*" means any and all Claims held by any Debtor against any other Debtor.

76.     "*Intercompany Equity Interests*" means any and all Equity Interests in a Debtor held by another Debtor.

77.     "*Investor*" means Mill Road Capital, L.P.

78.     "*Investment*" means Investor's investment of $10 million for the purchase of equity in accordance with the terms of the Plan Supplement.

79.     "*Law*" means any federal, state, local, or foreign "law" (including common Law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

80.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

81.     "*Loan Claims*" means any and all Claims against any Debtor related to, arising out of, arising under, or arising in connection with the Prepetition Credit Agreement Documents, which Loan Claims shall be comprised of (a) the Secured Loan Claims and (b) the Secured Lender Deficiency Claims.

82.     "*Management Incentive Plan*" means the management incentive plan described in Article IV of the Plan.

83.     "*New Organizational Documents*" means, on or after the Effective Date, collectively, the (a) amended and restated certificates of incorporation or similar governing document of each Reorganized Debtor; (b) the Equity Holders Agreement; and (c) any other documents required to govern each Reorganized Debtor.

84.     "*Notice and Claims Agent*" means Bankruptcy Management Solutions, Inc. (d/b/a Stretto) in its capacity as noticing, claims, and solicitation agent for the Debtors.

85.    "*Opt-In Proof of Claim Form*" means the form circulated to the Holders of General Unsecured Claims allowing them to opt in to the Releases.

86.    "*Other Priority Claims*" means any and all Claims against any Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code that are not Administrative Claims or Priority Tax Claims.

87.    "*Other Priority Claims Bar Date*" means the first Business Day that is the 45th day after the Effective Date.

88.    "*Other Secured Claims*" means any Secured Claims against any Debtor that are not DIP Claims or Secured Loan Claims.

89.    "*Paycheck Protection Program*" means that certain loan program originating from the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. 116-136, 135 Stat 281.

90.    "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code.

91.    "*Petition Date*" means the date on which the Debtors each filed a petition for relief commencing the Chapter 11 Cases.

92.    "*Plan*" means this second amended joint plan of reorganization under chapter 11 of the Bankruptcy Code, including all exhibits and schedules to the Plan, and any Plan Supplement, as they may be amended, supplemented or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

93.    "*Plan Documents*" means any and all of the documents, other than the Plan, to be executed, delivered, or performed in connection with the occurrence of the Effective Date, including, without limitation, insofar as such documents are not incorporated into the Plan through inclusion in the DIP Facility Documents, the Exit Facility Documents, and the Management Incentive Plan, subject to any consent rights set forth in the Plan.

94.    "*Plan Supplement*" means the compilation of documents and forms or drafts of documents, schedules, and exhibits to the Plan to be filed by the Debtors no later than the Plan Supplement Filing Date, as the same may be amended, modified, or supplemented, and including, without limitation, the following: (a) the identity of the known members of the Reorganized Board and the nature and compensation for any director who is an "insider" under the Bankruptcy Code; (b) the Exit Facility Credit Agreement; (c) the Equity Holders Agreement; (d) the Restricted Unit Grant Agreement; (e) a schedule of Retained Causes of Action; (f) the Assumed Executory Contracts and Unexpired Leases Schedule; and (g) any additional documents filed with the Bankruptcy Court before the Effective Date as additional Plan Documents or amendments, exhibits, attachments, supplements, annexes, schedules, and ancillary documents related to each of the foregoing, each of which shall be in form and substance reasonably acceptable to the Debtors, the Consenting Secured Lenders, and, in respect of (i) the Investment, (ii) the foregoing clauses (b), (c), and (g) (as it relates to clauses (b) and (c)), and (iii) as may otherwise be agreed between the Consenting Secured Lenders and the Investor, the Investor.

95.     "***Plan Supplement Filing Date***" means the date that is 14 calendar days prior to the Confirmation Hearing, or such later date as is determined by the Debtors.

96.     "***PPP Loan Agreement***" means that certain unsecured loan agreement provided pursuant to the Paycheck Protection Program and dated as of April 14, 2020, by and among Rubio's, as borrower, and Sunwest Bank, as lender, as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, in the amount of $10 million.

97.     "***PPP Loan Claims***" means any and all Claims against any Debtor related to, arising out of, arising under, or arising in connection with, the PPP Loan Agreement.

98.     "***Prepetition Agent***" means the administrative agent and sole bookrunner for the Lenders under the Prepetition Credit Agreement Documents or any successor agent thereof.

99.     "***Prepetition Credit Agreement***" means that certain credit agreement, dated as of August 24, 2010 (as amended, restated, amended and restated, modified or supplemented from time to time), by and among Rubio's, successor-by-merger to MRRC Merger Co., as borrower, and the other Debtors, as guarantors, GCI Capital Markets LLC, as administrative agent, LEG Partners Debenture SBIC, L.P., LEG Partners III SBIC, L.P., GC SBIC IV, L.P. and United Insurance Company of America, as lenders (as amended, supplemented, restated or otherwise modified[2] prior to the Petition Date).

100.    "***Prepetition Credit Agreement Documents***" means the Prepetition Credit Agreement together with any other agreements and documents executed or delivered in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified prior to the Petition Date.

101.    "***Prepetition Secured Lenders***" means the lenders party to the Prepetition Credit Agreement.

---

[2]     Including pursuant to the (i) First Amendment to Credit Agreement, dated as of September 8, 2010, (ii) the Second Amendment to Credit Agreement, dated as of January 12, 2011, (iii) Third Amendment to Credit Agreement, dated as of April 8, 2011, (iv) Waiver and Fourth Amendment to Credit Agreement, dated as of January 25, 2012, (v) Fifth Amendment to Credit Agreement, dated as of November 22, 2013, (vi) Sixth Amendment to Credit Agreement, dated as of December 15, 2014, (vii) Seventh Amendment to Credit Agreement, dated as of March 28, 2016, (viii) Eighth Amendment to Credit Agreement, dated as of January 20, 2017, (ix) Ninth Amendment to Credit Agreement, dated as of August 15, 2017, (x) Waiver and Tenth Amendment to Credit Agreement, dated as of December 7, 2017, (xi) Eleventh Amendment to Credit Agreement, dated as of January 2, 2018, (xii) Twelfth Amendment to Credit Agreement, dated as of January 31, 2018, (xiii) Thirteenth Amendment to Credit Agreement, dated as of February 14, 2018, (xiv) Fourteenth Amendment to Credit Agreement, dated as of February 21, 2018, (xv) Fifteenth Amendment to Credit Agreement, dated as of October 9, 2018, (xvi) Sixteenth Amendment to Credit Agreement, dated as of December 30, 2018, (xvii) Seventeenth Amendment to Credit Agreement, dated as of April 29, 2019; (xviii) Eighteenth Amendment to Credit Agreement, dated as of May 31, 2019, (xix) Nineteenth Amendment to Credit Agreement, dated as of June 28, 2019, (xx) Twentieth Amendment to Credit Agreement, dated as of October 30, 2019, (xxi) Twenty-First Amendment to Credit Agreement, dated as of November 20, 2019, (xxii) Twenty-Second Amendment to Credit Agreement, dated as of November 29, 2019, (xxiii) Twenty-Third Amendment to Credit Agreement, dated as of December 20, 2019, (xxiv) Twenty-Fourth Amendment to Credit Agreement, dated as of January 14, 2020.

102. "***Priority Tax Claims***" means any and all Claims against any Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

103. "***Professionals***" means (a) any and all professionals employed in the Chapter 11 Cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code or otherwise and (b) any and all professionals or other Entities seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

104. "***Professional Fee Account***" means funds held in trust by Debtors' counsel in an initial amount equal to the Professional Fee Reserve Amount to be funded and maintained for the benefit of the Professionals on and after the Effective Date solely for the purpose of paying all Allowed and unpaid Professional Fee Claims in accordance with the terms of the Plan.

105. "***Professional Fee Claim***" means any Claim of a Professional seeking a payment of compensation for services rendered or reimbursement of expenses incurred on the Petition Date and through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

106. "***Professional Fee Reserve Amount***" means the aggregate Accrued Professional Compensation through the Effective Date as reasonably estimated by the Retained Professionals in accordance with Article II of the Plan, ***minus*** the amount of any remaining retainers held by the Professionals; *provided* that the Professional Fee Reserve Amount shall not exceed the sum of (i) the amount set forth in the DIP Budget for payment to Professionals, ***minus*** (ii) the amounts paid to such Professionals (other than through application of retainers) prior to the Effective Date.

107. "***Proof of Claim***" means a "proof of claim," as defined in Bankruptcy Rule 3001, or a motion or request for payment of fees, costs or expenses made pursuant to section 503 of the Bankruptcy Code filed in any of the Debtors' Chapter 11 Cases.

108. "***Pro-Rata Share***" means with respect to any distribution on account of any Allowed Claim in any Class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in such Class.

109. "***Reinstated***" or "***Reinstatement***" mean, with respect to Claims and Equity Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

110. "***Related Parties***" means, with respect to any Entity, such Entity's predecessors, successors, assigns, affiliates (whether by operation of Law or otherwise) and subsidiaries, and each of their respective general partners, management companies, managed accounts or funds or investment vehicles, and each of the foregoing's respective current and former equity holders, officers, directors, managers, management committee directors, principals, shareholders, members, partners, general partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, in each case acting in such capacity, including in their capacity as directors of the Debtors, as applicable.

111.    "*Releases*" means the releases given by the Releasing Parties to the Released Parties under Article IX of the Plan.

112.    "*Released Parties*" means, collectively, (a) each of the Debtors, (b) the DIP Agent, (c) the DIP Lenders; (d) the Prepetition Agent; (e) each Prepetition Secured Lender; (f) the Investor; (g) the Exit Agent; (h) each of the Exit Lenders; and (i) the Related Parties of each of the foregoing Entities in clauses (a) through (h) of this definition.

113.    "*Releasing Parties*" means, collectively, (a) each of the Debtors, (b) the DIP Agent, (c) the DIP Lenders; (d) the Prepetition Agent; (e) each Prepetition Secured Lender; (f) each Holder of a General Unsecured Claim that elects to opt-in to the Release through an Opt-In Proof of Claim Form; (g) the Investor; (h) the Exit Agent; (i) each of the Exit Lenders; and (j) the Related Parties of each of the foregoing Entities in clauses (a) through (i) of this definition.

114.    "*Remaining Debtor*" means MRRC Hold Co.

115.    "*Reorganized Board*" means the board of directors of Holdings, as determined in accordance with the New Organizational Documents.

116.    "*Reorganized Company*" means Holdings and any successors thereto, by merger, consolidation or otherwise, as reorganized, on or after the Effective Date, including any new entity formed directly or indirectly acquire assets or equity of Holdings, in accordance with the Plan.

117.    "*Reorganized Debtors*" means collectively, each of the Debtors and any successors thereto, by merger, consolidation or otherwise, as reorganized on or after the Effective Date, in accordance with the Plan.

118.    "*Reorganized Equity Interests*" means the Equity Interests of the Reorganized Company authorized under the New Organizational Documents and issued pursuant to the Plan.

119.    "*Restructuring Expenses*" means the reasonable and documented fees and expenses incurred by the DIP Agent and the Prepetition Agent, in connection with the Chapter 11 Cases and the Restructuring Transactions, as provided in the DIP Orders, including the fees and expenses of: (a) Goldberg Kohn Ltd., as counsel to the Prepetition Secured Lenders and DIP Agent; (b) McDermott Will & Emery as special counsel to the Prepetition Secured Lenders and DIP Agent; (c) FTI Consulting, Inc. as financial advisor to the Prepetition Secured Lenders and DIP Agent; and (d) one local bankruptcy counsel to the DIP Agent; and in each case of (a)-(d) above, payable in accordance with the terms of the DIP Facility Documents.

120.    "*Restructuring Transactions*" means the transactions described in Article IV of the Plan.

121.    "*Retained Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to

27467227.1

13

(i) sections 327, 328, 329, 330, or 331 of the Bankruptcy Code or (ii) an order entered by the Bankruptcy Court authorizing such retention; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

122. "*Rubio's*" means Rubio's Restaurants, Inc.

123. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the official bankruptcy forms, as the same may have been amended, modified or supplemented from time to time.

124. "*Secured Claim*" means any and all Claims against any Debtor that are secured by a Lien on, or security interest in, property of such Debtor, or that has the benefit of rights of setoff under section 553 of the Bankruptcy Code, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value of the Holder's interest in such Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in section 506 of the Bankruptcy Code.

125. "*Secured Lender Deficiency Claims*" means the Claims for any remaining prepetition obligations arising under the Prepetition Credit Agreement after taking into account the Secured Loan Claims.

126. "*Secured Loan Claims*" means any and all Loan Claims against any Debtor that is a Secured Claim.

127. "*Securities Act*" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

128. "*Security*" has the meaning ascribed to such term in section 101(49) of the Bankruptcy Code.

129. "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

130. "*Subordinated Claim*" means any Claim that is subject to (a) subordination under section 510(b) of the Bankruptcy Code or (b) equitable subordination as determined by the Bankruptcy Court in a Final Order, including, without limitation, any Claim for or arising from the rescission of a purchase, sale, issuance, or offer of a Security of any Debtor; for damages arising from the purchase or sale of such a Security; or for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claims.

131.    "**_Unexpired Lease_**" means a lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code.

132.    "**_Unimpaired_**" means, with respect to any Claim or Equity Interest, such Claim or Equity Interest that is not Impaired.

133.    "**_U.S. Trustee_**" means the United States Trustee for the District of Delaware.

Section 1.2    *Rules of Interpretation and Computation of Time.*

(a)    For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (iv) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, of the Plan; (v) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitations, and shall be deemed to be followed by the words "without limitation"; (viii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; (viii) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (ix) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (x) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (xi) references to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Cases under the Bankruptcy Court's CM/ECF system.

(b)    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein, unless otherwise provided for herein.

(c)    All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

(d)    In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

# ARTICLE II.

## UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, Professional Fee Claims, and DIP Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in Article II of the Plan.

Section 2.1    *Administrative Claims.*

(a)     Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the applicable Debtor(s) or the Reorganized Debtor(s), as applicable, to the extent an Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases and except as otherwise provided in this Article II, each Holder of an Allowed Administrative Claim shall receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the unpaid portion of such Allowed Administrative Claim: (i) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Administrative Claim is due or as soon as reasonably practicable thereafter); (ii) if such Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; (iii) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable; or (iv) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

(b)     All requests for payment of an Administrative Claim (other than DIP Claims or Professional Fee Claims) that accrued on or before the Effective Date that were not otherwise accrued in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtors no later than the Administrative Claims Bar Date.  The Reorganized Debtors, in their sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval.  The Debtors or the Reorganized Debtors, as applicable, may also choose to object to any Administrative Claim no later than 120 days after the Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.

Section 2.2    *Priority Tax Claims.*

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or when such Allowed Priority Tax Claim becomes due and payable under applicable non-bankruptcy Law, or in the ordinary course of business.

Section 2.3    *Professional Fee Claims.*

(a)    All final requests for payment of Professional Fee Claims must be filed no later than the first Business Day that is 45 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

(b)    On the Effective Date, the Reorganized Debtors shall establish (if not already established) and fund the Professional Fee Account with Cash equal to the Professional Fee Reserve Amount; *provided* that any amounts remaining in the Funded Reserve Account shall be used to fund the Professional Fee Account.  The Professional Fee Account shall be maintained solely for the benefit of the Retained Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.  No Liens, Claims, or Equity Interests shall encumber the Professional Fee Account in any way.  The amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals from funds held in the Professional Fee Account when such Professional Fee Claims are Allowed by an Order of the Bankruptcy Court; *provided* that in the event the Professional Fee Reserve Amount is insufficient to satisfy the Professional Fee Claims, (x) each Retained Professional shall receive its portion of the Professional Fee Account, allocated on the basis of the unused amounts set forth in the DIP Budget for such Retained Professional, from the Professional Fee Account and (y) the Reorganized Debtors shall be required to satisfy the Allowed amounts of the remainder of any outstanding Professional Fee Claims; *provided* that the Committee's Professionals shall not seek allowance of any Professional Fee Claims in excess of $400,000, the maximum amount of any Allowed Professional Fee Claims for the Committee's Professionals shall be $400,000, and the Committee's Professionals shall have no entitlement to payment from the Reorganized Debtors. When all such Allowed amounts owing to Retained Professionals have been paid in full, any remaining amount in the Professional Fee Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court or any other Entity. Notwithstanding anything in the foregoing to the contrary, in the event that amounts deposited into the Professional Fee Account for the Committee's Professionals and Debtors' Professionals in accordance with the DIP Budget are ultimately more than the amount needed to satisfy in full all of the Allowed Professional Fee Claims of the Committee's Professionals and the Debtors' Professionals, such excess shall be promptly transferred to the Claims Cash Pool Account in an amount such that the total aggregate amount in the Claims Cash Pool Account shall not exceed $1,000,000 to be administered in accordance with Article IV of the Plan.

(c)    The Retained Professionals shall reasonably estimate in good faith their Accrued Professional Compensation prior to and as of the Effective Date and shall deliver such estimate to the Debtors and the Consenting Secured Lenders no later than five Business Days before the anticipated Effective Date; *provided* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Retained Professional.  If a Retained Professional does not provide such estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Retained Professional; *provided* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Retained Professional.  The total amount estimated as of the Effective Date, after accounting for any unused

retainers, shall consist of the Professional Fee Reserve Amount; *provided* that the Reorganized Debtors shall use Cash on hand to increase the amount of the Professional Fee Account to the extent fee applications are filed after the Effective Date by Professionals (other than the Committee's Professionals) in excess of the amount held in the Professional Fee Account based on such estimates.

(d)     Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Reorganized Debtors shall pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by such Debtor or Reorganized Debtor (as applicable) on or after the Effective Date in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court.  The Reorganized Debtors shall pay, within 10 Business Days after submission of a detailed invoice to the Reorganized Debtors, such reasonable Claims for compensation or reimbursement of expenses incurred by the Retained Professionals of the Debtors. From and after the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Debtor or Reorganized Debtor (as applicable) may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

Section 2.4     *DIP Claims.*

(a)     Subject to the DIP Orders, the DIP Claims shall be Allowed Claims in the full amount outstanding under the DIP Credit Agreement as of the Effective Date, including principal, interest, fees, costs, other charges, and expenses, and all other obligations related to the DIP Facility, if any.

(b)     Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release and discharge of and in exchange for release of all DIP Claims, on the Effective Date, the DIP Claims shall convert on a dollar-for-dollar basis into loans under, or otherwise paid or satisfied by, the Exit Facility pursuant to the Exit Facility Documents in an amount equal to the Exit Conversion Amount.

Section 2.5     *Statutory Fees.*

The Debtors and the Reorganized Debtors, as applicable, shall pay all quarterly fees under 28 U.S.C § 1930(a), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' or Reorganized Debtors' business, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

# ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

Section 3.1    *Classification of Claims.*[3]

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor, and the classification of Claims and Equity Interests set forth herein shall apply separately to each of the Debtors.  Except for the Claims addressed in Article II of the Plan (or as otherwise set forth herein), all Claims and Equity Interests are placed in Classes for each of the Debtors.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims, Professional Fee Claims, and DIP Claims, as described in Article II of the Plan.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including for purposes of voting, Confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that such Claim or Equity Interest qualifies within the description of such Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.

The classification and the manner of satisfying all Claims under the Plan take into consideration (a) the existence of guarantees or alleged guarantees by the Debtors of obligations of other Debtors or Entities; and (b) that Debtors may be joint obligors with other Debtors or Entities with respect to the same obligation.

Section 3.2    *Class Identification.*

The following chart represents the classification of Claims and Equity Interests for each Debtor pursuant to the Plan.

| Class | Claims and Equity Interests | Status | Voting Rights |
|-------|------------------------------|--------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 3 | Secured Loan Claims | Impaired | Yes |
| Class 4 | General Unsecured Claims | Impaired | No (deemed not to accept) |

---

[3]    The Debtors reserve the right to separately classify Claims to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable Law.

| Class | Claims and Equity Interests | Status | Voting Rights |
|---|---|---|---|
| Class 5 | Intercompany Claims | Unimpaired/ Impaired | No (conclusively presumed to accept or deemed not to accept) |
| Class 6 | Subordinated Claims | Impaired | No (deemed not to accept) |
| Class 7 | Equity Interests | Impaired | No (deemed not to accept) |
| Class 8 | Intercompany Equity Interests | Impaired | No (deemed not to accept) |

Section 3.3    *Treatment and Voting Rights of Claims and Equity Interests.*

Except to the extent that the Debtors and a Holder of an Allowed Claim or Allowed Equity Interest, as applicable, agree to less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Equity Interest.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Equity Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter, or, if payment is not due, in accordance with its terms in the ordinary course.

(a)    *Class 1—Other Priority Claims.*

    (i)    *Classification*: Class 1 consists of all Other Priority Claims.

    (ii)    *Treatment:* Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Other Priority Claim, each Holder of such Allowed Other Priority Claim shall (A) be paid in full in Cash on or as soon as reasonably practicable after (1) the Effective Date, (2) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or (3) such other date as may be ordered by the Bankruptcy Court; or (B) receive such other recovery as is necessary to satisfy section 1129 of the Bankruptcy Code.

    (iii)    *Impairment and Voting:* Class 1 is Unimpaired and Holders of Other Priority Claims are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Other Priority Claims.

(b)    *Class 2—Other Secured Claims.*

(i)  *Classification*: Class 2 consists of all Other Secured Claims.

(ii)  *Treatment:* Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each Holder thereof shall receive: (A) payment in full in Cash; (B) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (C) Reinstatement of such Claim; or (D) other treatment rendering such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(iii)  *Impairment and Voting*: Class 2 is Unimpaired and Holders of Other Secured Claims are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Other Secured Claims.

(c)  *Class 3—Secured Loan Claims.*

(i)  *Classification*: Class 3 consists of Secured Loan Claims.

(ii)  *Treatment*: Except to the extent that a Holder of an Allowed Secured Loan Claim agrees to less favorable treatment, on or as soon as is reasonably practicable after the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Secured Loan Claim, each Holder thereof shall receive their Pro-Rata Share of: (A) a portion of the Exit Facility (after accounting for the Exit Conversion Amount) in a principal amount equal to $37 million and (B) the Reorganized Equity Interests.

(iii)  *Impairment and Voting*:  Secured Loan Claims are Impaired and are entitled to vote to accept or reject the Plan.

(d)  *Class 4—General Unsecured Claims.*

(i)  *Classification*: Class 4 consists of all General Unsecured Claims.

(ii)  *Treatment:* On the Effective Date, all General Unsecured Claims shall be cancelled, released, and discharged, and shall be of no further force or effect.  Therefore, Holders of General Unsecured Claims shall not receive any distribution on account of such General Unsecured Claims.

(iii)  *Impairment and Voting*: General Unsecured Claims are Impaired and Holders of such Claims are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of General

Unsecured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such General Unsecured Claims.

(iv)    *Release Opt-In:* Notwithstanding the above treatment, each Holder of an Allowed General Unsecured Claim shall be eligible to receive the consideration being provided to Holders of Allowed General Unsecured Claims that timely elect to opt-in to the Releases, as described in Article IV of the Plan.

(v)    *Secured Lender Deficiency Claim*: If the Committee (i) does not object, or assist or support any other party in objecting, to Confirmation of the Plan, and (ii) does not assert, or assist or support any other party in asserting, a "Challenge" (as defined in the DIP Order), each Holder of an Allowed Secured Lender Deficiency Claim will waive the right to receive any distribution from the Claims Cash Pool on account of their Allowed Secured Lender Deficiency Claims.

(e)    *Class 5—Intercompany Claims.*

(i)    *Classification*: Class 5 consists of all Intercompany Claims.

(ii)    *Treatment*: On the Effective Date, at the option of the Debtors, and the Consenting Secured Lenders, each Intercompany Claim shall be either (A) Reinstated or (B) cancelled, released and discharged without any distribution on account of such Claims.

(iii)    *Impairment and Voting*: Holders of Intercompany Claims that are Reinstated are conclusively presumed to accept the Plan pursuant to section 1126(f) and Holders of Intercompany Claims that are cancelled, released and discharged under the Plan without any distribution are deemed not to accept pursuant to section 1126(g) of the Bankruptcy Code, respectively. Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Intercompany Claims.

(f)    *Class 6—Subordinated Claims.*

(i)    *Classification*: Class 6 consists of all Subordinated Claims, if any.

(ii)    *Treatment*: On the Effective Date, all Subordinated Claims shall be cancelled, released, and discharged as of the Effective Date, and shall be of no further force or effect. Therefore, Holders of Subordinated Claims shall not receive any distribution on account of such Subordinated Claims.

(iii)    *Impairment and Voting*: Subordinated Claims are Impaired and Holders of such Claims are deemed not to have accepted the Plan pursuant to section

1126(g) of the Bankruptcy Code.  Therefore, Holders of Subordinated Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Subordinated Claims.

(g)    *Class 7—Equity Interests*.

    (i)    *Classification*: Class 7 consists of all Equity Interests.

    (ii)    *Treatment*:  On the Effective Date, all Equity Interests shall be cancelled without any distribution on account of such Equity Interests.

    (iii)    *Impairment and Voting*: Equity Interests are Impaired and Holders of such Equity Interests are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Equity Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Equity Interests.

(h)    *Class 8—Intercompany Equity Interests.*

    (i)    *Classification*: Class 8 consists of all Intercompany Equity Interests.

    (ii)    *Treatment*: On the Effective Date, the Intercompany Equity Interests shall be cancelled without any distribution on account of such Equity Interests; *provided, however*, that at the option of the Debtors and the Consenting Secured Lenders, the Intercompany Equity Interests may be Reinstated for administrative convenience.

    (iii)    *Impairment and Voting*: Holders of Intercompany Equity Interests are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of such Equity Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Intercompany Equity Interests.

Section 3.4    *Special Provision Governing Unimpaired Claims*.

Except as otherwise provided in the Plan, the DIP Orders, or the DIP Facility Documents, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claim, including, but not limited to, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

Section 3.5    *Other Priority Claims.*

All requests for payment of an Other Priority Claim (other than DIP Claims or Professional Fee Claims) that accrued on or before the Effective Date that were not otherwise accrued in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtors no later than the Other Priority Claims Bar Date.  The Debtors or the Reorganized Debtors, as applicable, may choose to object to any Other Priority Claim no later than 120 days after the Other

Priority Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.

Section 3.6     *PPP Loan Claims*.

The Debtors have used the proceeds of the loans issued under the PPP Loan Agreement to pay "forgivable expenses" as that term is defined under the Paycheck Protection Program and CARES Act. Accordingly, the Debtors anticipate that the full amount of the PPP Loan Claims will be forgiven in accordance with applicable Law. To the extent any portion of the PPP Loan Claims are not forgiven, such portion of PPP Loan Claims shall be treated as General Unsecured Claims in Class 4 and shall be cancelled, released, and discharged as of the Effective Date, and of no further force or effect.

Section 3.7     *General Unsecured Claims.*

All requests for payment of a General Unsecured Claim that accrued on or before the Petition Date must be submitted through an Opt-In Proof of Claim Form and served on the Debtors no later than the General Unsecured Claims Bar Date. The General Unsecured Claims Administrator may (a) choose to object to any General Unsecured Claim by the Claims Objection Deadline or (b) settle General Unsecured Claims in the ordinary course of business without further Bankruptcy Court approval, in each case subject to five (5) business days' notice to the Debtors and Reorganized Debtors.

Section 3.8     *Voting; Presumptions; Solicitation.*

(a)     *Acceptance by Certain Impaired Classes*. Only Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the applicable Plan. An Impaired Class of Claims shall have accepted the Plan if (i) the Holders of at least 66.6% in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. Holders of Claims in Class 3 have received Ballots containing detailed voting instructions.

(b)     *Conclusively Presumed Acceptance by Unimpaired Classes*. Holders of Claims in Class 1 and Class 2, and certain Holders of Claims in Class 5 are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Accordingly, such Holders are not entitled to vote to accept or reject the Plan and the vote of such Holders shall not be solicited.

(c)     *Deemed Not To Accept by Certain Impaired Classes*. Holders of Claims and Equity Interests in Class 4, Class 6, Class 7, and Class 8, and certain Holders of Claims in Class 5 are deemed not to accept the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, such Holders are not entitled to vote to accept or reject the Plan and the vote of such Holders shall not be solicited.

(d)     *Controversy Concerning Impairment*. If a controversy arises as to whether any Claims or Equity Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

27467227.1

Section 3.9     *Nonconsensual Confirmation.*

Because certain Class of Claims or Equity Interests entitled to vote on an applicable Plan are deemed not to vote to accept the Plan, the Debtors will seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

Section 3.10     *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Equity Interests, and the respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Debtors reserve the right to reclassify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

Section 3.11     *Intercompany Equity Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Equity Interests are not being received by Holders of such Intercompany Equity Interests on account of their Intercompany Equity Interests but for the purposes of administrative convenience and due to the importance of maintaining the corporate structure for the ultimate benefit of the Holders that receive the Reorganized Equity Interests in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions on account of such Holders' Allowed Claims.

Section 3.12     *No Waiver.*

Nothing contained in the Plan shall be construed to waive a Debtor's, Reorganized Debtor's or other Entity's right to object on any basis to any Claim, including after the Effective Date.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 4.1     *Compromise of Controversies.*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classifications, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests, Causes of Action, and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

27467227.1

Other than as specifically set forth herein, the Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Equity Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Equity Interests (as applicable) in any Class are intended to be and shall be final.

Section 4.2    *Sources of Consideration for Plan Distribution.*

The Debtors shall fund distributions under the Plan with: (a) Cash on hand, including Cash from operations; (b) the proceeds of the DIP Loans; (c) the Exit Facility; and (d) the Reorganized Equity Interests. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors. The Reorganized Debtors shall be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers shall be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and shall not violate the terms of the Plan.

From and after the Effective Date, subject to any applicable limitations set forth in any post-Effective Date agreement (including, without limitation, the Exit Facility Documents and the Equity Holders Agreement), the Reorganized Debtors shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of directors of the applicable Reorganized Debtors deem appropriate.

Section 4.3    *Restructuring Transactions.*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be reasonably necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan and the Plan Supplement, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable Law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of formation or incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable Law; and (d) all other actions that the Reorganized Debtors reasonably determine are necessary or appropriate. For the purposes of effectuating the Plan, none of the Restructuring Transactions contemplated herein shall constitute a change of control under any agreement, contract, or document of the Debtors.

Section 4.4    *Continued Corporate Existence.*

Except as otherwise provided in the Plan, or as otherwise may be agreed between the Debtors and the Consenting Secured Lenders, each of the Debtors, as Reorganized Debtors, shall

continue to exist on and after the Effective Date as a separate legal Entity with all of the powers available to such legal Entity under applicable Law and pursuant to the New Organizational Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable Law.  On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may, without the need for approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, take such action as permitted by applicable Law, and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation, causing: (a) a Reorganized Debtor to be merged into another Reorganized Debtor or an Affiliate of a Reorganized Debtor; (b) a Reorganized Debtor to be dissolved; (c) the legal name of a Reorganized Debtor to be changed; (d) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter; or (e) the reincorporation of a Reorganized Debtor under the Law of jurisdictions other than the Law under which the Debtor currently is incorporated.

Section 4.5    *Corporate Action.*

(a)    On the Effective Date, all actions contemplated by the Plan, the Plan Supplement, and the Restructuring Transactions shall be deemed authorized and approved in all respects, including: (i) the selection of the directors and officers of each of the Reorganized Debtors; (ii) the distribution of the Reorganized Equity Interests as provided herein or in the Plan Supplement Documents; (iii) the execution and entry into the Exit Facility Documents; and (iv) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date) or Restructuring Transactions, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the security holders, members, managers, directors, or officers of the Debtors or the Reorganized Debtors or otherwise.

(b)    On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, operating agreements, and instruments contemplated by the Plan and the Plan Supplement (or necessary or desirable to effect the transactions contemplated by the Plan and the Plan Supplement) in the name of and on behalf of the Reorganized Debtors, including the Reorganized Equity Interests, the Exit Facility Documents, and any and all agreements, documents, securities, and instruments relating to the foregoing.

(c)    The authorizations and approvals contemplated by this Section 4.5 shall be effective notwithstanding any requirements under non-bankruptcy Law.

Section 4.6    *Vesting of Assets.*

Except as otherwise provided in the Plan or the Plan Documents, on the Effective Date, all Assets, including all Claims, rights, and Causes of Action, and any property acquired by the

Debtors under or in connection with the Plan, shall vest in each respective Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, and interests. Subject to the terms of the Plan, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Claims), Equity Interests, and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

Section 4.7    *Indemnification Provisions in Organizational Documents.*

As of the Effective Date, each Reorganized Debtor's bylaws or other organizational documents, as applicable, shall, to the fullest extent permitted by applicable Law, provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, current and former managers, directors, officers, employees, or agents against any Claims or Causes of Action, whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted. None of the Reorganized Debtors shall amend or restate its certificate of incorporation, bylaws, or similar organizational document after the Effective Date to terminate or materially adversely affect (a) any of the Reorganized Debtors' obligations referred to in this Section 4.7 or (b) the rights of such managers, directors, officers, employees, or agents referred to in this Section 4.7.

Section 4.8    *Cancellation of Existing Securities and Agreements.*

(a)    On the Effective Date, except as otherwise specifically provided for in the Plan: (i) the obligations of the Debtors under any certificate, share, note, bond, agreement, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest, including the Prepetition Credit Agreement and the DIP Credit Credit Agreement and their related security and collateral documents (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan, if any) shall be cancelled, terminated and of no further force or effect, without further act or action, and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated or assumed pursuant to the Plan, if any) shall be released and discharged.

(b)    Notwithstanding such cancellation and discharge:

(i)    Pursuant to Section 8.2 of the DIP Credit Agreement, all indemnification or other protections provided to any Indemnified Person (as defined therein) pursuant to the provisions in Article X and Article XII of the DIP Credit Agreement shall survive. The DIP Facility Documents shall also continue

in effect for purposes of allowing the DIP Agent to (a) receive distributions from the Debtors under the Plan and to make further distributions to the Holders of the DIP Claims on account of such Claims; (b) enforce its rights, Claims and interests with respect to the DIP Lenders; and (c) enforce its rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to Holders of DIP Claims, including any rights to priority of payment with respect to the DIP Lenders; and (d) appear and be heard in the Chapter 11 Cases or in any other proceeding, including to enforce any obligation owed to the DIP Agent or Holders of DIP Claims under the Plan; and

(ii)     The Prepetition Credit Agreement Documents shall continue in effect solely for purposes of allowing the Prepetition Agent to: (a) receive distributions from the Debtors under the Plan and to make further distributions to the Holders of the Secured Loan Claims on account of such Claims; (b) enforce its rights, Claims and  interests with respect to the Prepetition Secured Lenders; (c) enforce its rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to Holders of Secured Loan Claims, including any rights to priority of payment with respect to the Prepetition Secured Lenders; and (d) appear and be heard in the Chapter 11 Cases or in any other proceeding, including to enforce any obligation owed to the Agent or Holders of Secured Loan Claims under the Plan.

Section 4.9      *Approval of the Exit Facility and the Exit Facility Documents.*

(a)      On the Effective Date, the Reorganized Debtors shall have access to debt financing in the form of the Exit Facility in an initial aggregate amount equal to $52 million.  The Reorganized Debtors may use the Exit Facility for any purpose permitted by the Exit Facility Documents, including the funding of obligations under the Plan and satisfaction of ongoing working capital needs.

(b)      Confirmation of the Plan shall be deemed to constitute approval of the Exit Facility and the Exit Facility Documents (including all transactions contemplated thereby, such as any supplementation or additional syndication of the Exit Facility, and all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein) and, subject to the occurrence of the Effective Date, authorization for the Reorganized Debtors to enter into and perform their obligations under the Exit Facility Documents and such other documents as may be reasonably required or appropriate, in each case, in accordance therewith.

(c)      The Exit Facility Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential

27467227.1

transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy Law.

(d)    On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents: (i) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents; (ii) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents; and (iii) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy Law.  The Reorganized Debtors and the Entities granting such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other Law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

Section 4.10    *Issuance of Reorganized Equity Interests.*

(a)    Shares of Reorganized Equity Interests shall be authorized under the New Organizational Documents, issued on the Effective Date and distributed as soon as practicable thereafter in accordance with the Plan.  All of the Reorganized Equity Interests issuable in accordance with the Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.  The issuance of the Reorganized Equity Interests is authorized without the need for any further corporate action and without any further action by any Holder of a Claim or Equity Interest.

(b)    All shares of common stock of Holdings outstanding prior to Consummation (including all rights exchangeable or exercisable for shares of common stock of Investor) shall be extinguished upon Consummation and holders thereof shall not receive any payment or property on account of any such shares of capital stock.

(c)    On the Effective Date, the Reorganized Debtors and the Holders of Reorganized Equity Interests shall enter into the New Organizational Documents in substantially the form included in the Plan Supplement.  The New Organizational Documents shall be deemed to be valid, binding, and enforceable in accordance with their terms, and each Holder of Reorganized Equity Interests shall be bound thereby, in each case without the need for execution by any party thereto other than the Reorganized Debtors.

Section 4.11    *Claims Cash Pool and Release Opt-In.*

(a)    On the Effective Date, the Debtors or Reorganized Debtors shall establish and fund the Claims Cash Pool Account with the Claims Cash Pool, with the amounts to be determined

under clauses (ii) and (iii) of the definition of "Claims Cash Pool" to be initially established using the estimates provided in Section 2.3(c) pending the final allowance of the Professional Fee Claims, which amount shall be no less than $650,000.  As soon as practicable following the final allowance of the Professional Fee Claims, the Debtors shall deposit any additional Cash in the amounts determined under clauses (ii) and (iii) of the definition of "Claims Cash Pool" (if any) into the Claims Cash Pool Account from the portion of the Professional Fee Reserve Amount allocated to the Committee's Professionals and the Debtors' Professionals.  In no event shall the amounts deposited into the Claims Cash Pool Account exceed $1,000,000.

(b)     Further, as soon as reasonably practicable after the occurrence of the Claims Objection Deadline and the final allowance of the Professional Fee Claims, the General Unsecured Claims Administrator shall distribute the funds in the Claims Cash Pool Account to Holders of Allowed General Unsecured Claims that elect to opt-in and be bound by the Releases set forth in Article IX of the Plan by appropriately completing and filing with the Notice and Claims Agent an Opt-In Proof of Claim Form on or before the General Unsecured Claims Bar Date.  Any such Holders will be eligible to receive their Pro-Rata Share of the Claims Cash Pool (after deducting all fees and expenses incurred by the General Unsecured Claims Administrator) on account of their Allowed General Unsecured Claims; *provided* that no Holder of a General Unsecured Claim shall be entitled to receive more than 18% of the Allowed amount of its General Unsecured Claim.

(c)     The Claims Cash Pool Account (i) shall not be and shall not be deemed property of the Debtors or the Reorganized Debtors, (ii) shall be held in reserve to fund distributions as provided herein, and (iii) no Liens, Claims, or Interests shall encumber the Claims Cash Pool Account in any way (whether on account of the Exit Facility or other otherwise).  After all distributions have been made to the Holders of General Unsecured Claims that timely deliver an Opt-In Proof of Claim Form, any and all Cash remaining in the Claims Cash Pool Account shall be indefeasibly paid to the Reorganized Debtors.

Section 4.12    *Exemption from Registration Requirements.*

The issuance of the Reorganized Equity Interests under the Plan or the Plan Supplement shall be exempt from registration under the Securities Act and any other applicable securities Laws pursuant to section 1145 of the Bankruptcy Code.  These Securities may be resold without registration under the Securities Act or other federal securities Laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the Holder is an "underwriter" with respect to such Securities, as that term is defined in section 1145(b) of the Bankruptcy Code.  In addition, such exempt Securities generally may be resold without registration under state securities Laws pursuant to various exemptions provided by the respective Laws of the several states.

Section 4.13    *Organizational Documents.*

Subject to Article V of the Plan, the Reorganized Debtors shall enter into such agreements and amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan.  The New Organizational Documents shall comply with section 1123(a)(6) of the Bankruptcy Code.

Section 4.14    *Exemption from Certain Transfer Taxes and Recording Fees.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any Stamp or Similar Tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Unless the Bankruptcy Court orders otherwise, all sales, transfers and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

Section 4.15    *Directors and Officers of the Reorganized Debtors.*

The members of the Reorganized Board will be designated in accordance with the Plan Supplement.  Except to the extent that a member of the board of directors or board of managers, or the sole manager, as applicable, of a Debtor is designated in the Plan Supplement to serve as a director, manager or sole manager of such Reorganized Debtor on the Effective Date, the members of the board of directors or board of managers, or the sole manager, as applicable, of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date, and each such director, manager, or sole manager shall be deemed to have resigned or shall otherwise cease to be a director, manager or sole manager of the applicable Debtor on the Effective Date.  Each of the directors, managers, sole managers and officers of each of the Reorganized Debtors shall serve pursuant to the terms of the applicable New Organizational Documents of such Reorganized Debtor and may be designated, replaced or removed in accordance with such New Organizational Documents.

Section 4.16    *Management Incentive Plan.*

On the Effective Date, the Management Incentive Plan shall be deemed adopted by the Reorganized Board to grant select members of the management team of the Reorganized Company and its subsidiaries profits interests as described in the Plan Supplement.

Section 4.17    *Effectuating Documents; Further Transactions.*

Prior to, on, and after the Effective Date, the Debtors and Reorganized Debtors and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such

27467227.1

actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, the DIP Facility Documents, the Exit Facility Documents, the New Organizational Documents, and any securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

The Confirmation Order shall, and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

Section 4.18    *Restructuring Expenses*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, but not paid pursuant to the DIP Orders or DIP Facility Documents, shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to the Plan and the DIP Orders, without any requirement to file a fee application with the Bankruptcy Court, without the need for itemized time detail, and without any requirement for Bankruptcy Court review or approval.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least five Business Days before the anticipated Effective Date (or such shorter period as the Debtors may agree); *provided* that such estimate shall not be considered an admission or limitation with respect to such Restructuring Expenses.  On or as soon as reasonably practicable after the Effective Date, final invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors.  In addition, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay pre- and post-Effective Date, when due and payable in the ordinary course, Restructuring Expenses related to implementation, consummation and defense of the Plan whether incurred before, on, or after the Effective Date.

Section 4.19    *Retained Causes of Action.*

 Unless any Causes of Action or Claims against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, the DIP Orders, or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action or Claims in the ordinary course, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action and Claims shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such retained Causes of Action or Claims, and may exercise any and all rights in connection therewith. For the avoidance of doubt, in no instance will any Cause of Action preserved include any Claim or Cause of Action with respect to, or against, a Released Party.

**No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Schedules, or the Disclosure Statement to any Claim or Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue**

**any and all available Causes of Action against them. All rights of the Debtors and Reorganized Debtors to prosecute any and all Claims or Causes of Action against any Entity are expressly preserved, except as otherwise expressly provided herein.**

## ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 5.1    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

(a)    All Executory Contracts and Unexpired Leases of the Debtors that are not otherwise assumed or rejected will be deemed rejected by the applicable Debtor or Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than (i) those that are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (ii) those that have been previously assumed or rejected pursuant to a Final Order by the Debtors prior to the Effective Date; and (iii) those that are the subject of a motion seeking assumption or rejection as of the Effective Date. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V but not assigned to a third party shall be deemed to be assigned to a Reorganized Debtor, and be fully enforceable by, the applicable contracting Reorganized Debtor(s) in accordance with the terms thereof, except as otherwise modified by the provisions of the Plan, or by any order of the Bankruptcy Court.

(b)    The Confirmation Order shall constitute an order of the Bankruptcy Court: (i) approving the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts or Unexpired Leases, as described in the Plan and Plan Supplement, pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2); (ii) providing that each assumption, assignment, or rejection, as the case may be, is in the best interest of the Reorganized Debtors, their Estates, and all parties in interest in the Chapter 11 Cases; and (iii) providing that the requirements for assumption or assumption and assignment of any Executory Contract or Unexpired Lease to be assumed have been satisfied. Unless otherwise indicated, all assumptions or rejections of Executory Contracts or Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

(c)    Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or

27467227.1

Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

Section 5.2    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

(a)    Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost in Cash on the Effective Date, subject to the limitation described in the following paragraph, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.  No later than the Plan Supplement Filing Date, to the extent not previously filed with the Bankruptcy Court and served on affected counterparties, the Debtors shall provide for notices of proposed assumption and proposed Cure Costs to be filed and served upon applicable contract and lease counterparties, together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a contract or lease counterparty to a proposed assumption, assumption and assignment, or related Cure Cost must be filed, served, and actually received by the Debtors within fourteen (14) days of such assumption or assumption and assignment.

(b)    Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or Cure Cost shall be deemed to have assented to such assumption or Cure Cost.  In the event of a dispute regarding (i) the amount of any Cure Cost, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (iii) any other matter pertaining to assumption and/or assignment, then the Bankruptcy Court shall hear such dispute prior to the assumption and/or assignment becoming effective, and the applicable Cure Costs associated therewith (if any) shall be paid following entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment and shall not prevent or delay implementation of the Plan or Effective Date; *provided* that the Debtors may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; *provided, further,* that notwithstanding anything to the contrary herein, the Debtors reserve the right to either reject, any Executory Contract or Unexpired Lease within 30 days after the entry of a Final Order resolving an objection to assumption or assumption and assignment, determining the Cure Cost under an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease.

(c)    Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Cost, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment.  Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

Section 5.3      *Indemnification and Reimbursement Obligations.*

Any and all Indemnification Obligations of the Debtors, including pursuant to their corporate charters, agreements, bylaws, limited liability company agreements, memorandum and articles of association, or other organizational documents, or board resolutions, employment contracts or other agreements for the directors, officers, managers, employees, attorneys, other professionals and agents employed by the Debtors to indemnify current and former officers, directors, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors based upon any act or omission for or on behalf of the Debtors shall remain in full force and effect to the maximum extent permitted by applicable Law and shall not be discharged, impaired, or otherwise affected by the Plan.  All such obligations shall be deemed and treated as Executory Contracts that are assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors.  Any Claim based on the Debtors' obligations in this Section 5.3 herein shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code or otherwise.

Section 5.4      *Claims Based on Rejection of Executory Contracts and Unexpired Leases (if Any).*

Unless otherwise provided by a Bankruptcy Court order, Proofs of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases, if any, pursuant to the Plan or otherwise must be filed with the Notice and Claims Agent by the General Unsecured Claims Bar Date.  Proofs of Claim arising from the rejection or repudiation of the Debtors' Executory Contracts and Unexpired Leases, if any, that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Reorganized Debtor without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection or repudiation of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' Executory Contract and Unexpired Leases, if any, shall constitute General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

Section 5.5      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor including any Executory Contracts and Unexpired Leases assumed by such Debtor, shall be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) that are not otherwise assumed or rejected will be deemed assumed by the applicable Debtor or Reorganized Debtor in accordance with the provisions and requirements of section 365 and 1123 of the Bankruptcy Code.

Section 5.6      *Employee Compensation and Benefit Programs.*

(a)      Except as otherwise provided herein or in the Plan Supplement and except for any equity-based compensation or incentive plans, on and after the Effective Date, the Reorganized

Debtors may, but are not required to, honor in the ordinary course of business any employee benefit plans (as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974) and any other contracts, agreements, policies, programs, and plans for, among other things, employment, compensation, health care, disability and other welfare benefits, deferred compensation benefits, severance policies and benefits, retirement benefits, workers' compensation insurance and accidental death and dismemberment insurance that as of immediately prior to the Petition Date are, and as of immediately prior to the Effective Date continue to be, sponsored, maintained, or contributed to by any of the Debtors for the directors, officers, employees and other service providers of any of the Debtors who served in such capacity at any time; *provided, however*, that notwithstanding the foregoing, the Reorganized Debtors shall assume and otherwise Reinstate the Deferred Compensation Plan on the Effective Date.  Nothing contained herein shall entitle any person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such expired benefit plan or alleged entitlement under any such expired benefit plan. Nothing herein shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, Claims, Causes of Action, or other rights with respect to any benefit plan, whether expired or unexpired.

(b)     Except as otherwise provided herein, none of (i) the Debtors' emergence from chapter 11 of the Bankruptcy Code as contemplated by the Plan or (ii) the consummation of the transactions provided in the Plan (or otherwise contemplated by the Restructuring Transactions and the Plan to occur prior to or on or about the Effective Date), in each case alone or together with any other event, will (A) entitle any current or former director, officer, employee or other service provider of any of the Debtors to any payment or benefit, (B) accelerate the time of payment or vesting or trigger any payment or funding of compensation or benefits under, or increase the amount payable or trigger any other obligation under, any benefit plan or expired benefit plan or (C) limit or restrict the right of the Debtors or Reorganized Debtors to merge, amend or terminate any benefit plan, in each case including as a result of a "change in control" or similar provision or as a result of giving rise to any person to terminate his or her service with the Debtors or Reorganized Debtors for "good reason" or similar provision.

Section 5.7     *Insurance Policies.*

All insurance policies pursuant to which any Debtor has any obligations in effect as of the Effective Date shall be deemed and treated as Executory Contracts pursuant to the Plan and shall be assumed and assumed and assigned to the respective Reorganized Debtors and shall continue in full force and effect thereafter in accordance with such policy's respective terms.

Section 5.8     *Reservation of Rights.*

Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.

27467227.1

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

Section 6.1    *Distribution on Account of Claims and Equity Interests Allowed as of the Effective Date.*

Except as otherwise provided in the Plan or a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Equity Interests Allowed on or before the Effective Date shall be made on the Distribution Date; *provided* that (a) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) in accordance with Article II of the Plan, Allowed Priority Tax Claims, unless otherwise agreed, shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy Law, or in the ordinary course of business.

Section 6.2    *Distribution on Account of Claims and Equity Interests Allowed After the Effective Date.*

(a)    *Payments and Distributions on Disputed Claims.*  Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the first day that is 30 Business Days after the Disputed Claims become Allowed Claims; *provided* that (i) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (ii) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article IX of the Plan and paid.

(b)    *Special Rules for Distributions to Holders of Disputed Claims.*  Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no payments or distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or agreement among the relevant parties, or by Final Order.

Section 6.3    *Timing and Calculation of Amounts to Be Distributed.*

Except as otherwise provided herein, on the Distribution Date, each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  Except as otherwise provided in the Plan, or any order of the Bankruptcy

Court, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

Section 6.4    *Delivery of Distributions*.

(a)    *Record Date for Distributions*.  On the Distribution Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Date.  If a Claim is transferred twenty (20) or fewer days before the Distribution Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b)    *Delivery of Distributions in General*.  Except as otherwise provided in the Plan, the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in the Debtors' records as of the date of any such distribution, including the address set forth in any Proof of Claim filed by that Holder; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

(c)    *Delivery of Distributions on Account of Secured Loan Claims*.  The Prepetition Agent shall be deemed to be the holder of all Secured Loan Claims for purposes of distributions to be made hereunder, and all distributions on account of the Secured Loan Claims in Class 3 shall be made to the Prepetition Agent.  As soon as practicable following compliance with the requirements set forth in Article VI of the Plan (as applicable), the Prepetition Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of Allowed Secured Loan Claims in Class 3 in accordance with the terms of the Prepetition Credit Agreement Documents and the Plan.  Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Prepetition Agent shall not have any liability to any Entity with respect to distributions made or directed to be made by the Prepetition Agent.

(d)    *Delivery of Distributions on Account of DIP Claims*.  The DIP Agent shall be deemed to be the Holder of all DIP Claims for purposes of distributions to be made hereunder, and all distributions on account of such DIP Claims shall be made to the DIP Agent.  As soon as practicable following compliance with the requirements set forth in Article VI of the Plan (as applicable), the DIP Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of DIP Claims in accordance with the terms of the DIP Facility, subject to any modifications to such distributions in accordance with the terms of the Plan. Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the DIP Agent shall not have any liability to any Entity with respect to distributions made or directed to be made by the DIP Agent.

(e)    *Delivery of Distributions on Account of General Unsecured Claims*.  On the applicable distribution date, the Distribution Agent shall make distributions to Holders of Allowed General Unsecured Claims in accordance with Article IV of the Plan at the address designated on the respective Opt-In Proof of Claim Forms executed and delivered by Holders of Allowed General

Unsecured Claims to the Notice and Claims Agent, or, if no address has been provided, at the address indicated on the Debtors' books and records as of the date of any such distribution, or the address set forth in the Schedules.

Section 6.5     *Distributions by Distribution Agent (if any).*

(a)     The Debtors and the Reorganized Debtors, as applicable, shall have the authority, in their sole discretion, to enter into agreements with one or more Distribution Agents, including the General Unsecured Claims Administrator, to facilitate the distributions required hereunder. To the extent the Debtors and the Reorganized Debtors, as applicable, determine to utilize a Distribution Agent to facilitate the distributions under the Plan to Holders of Allowed Claims, any such Distribution Agent would first be required to: (i) affirm its obligation to facilitate the prompt distribution of any documents; (ii) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan; and (iii) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required under the Plan to be distributed by such Distribution Agent.

(b)     The Debtors or the Reorganized Debtors, as applicable, shall pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions, or consents. The Distribution Agents shall submit detailed invoices to the Debtors or the Reorganized Debtors, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement and the Debtors or the Reorganized Debtors, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtors or the Reorganized Debtors, as applicable, deem to be unreasonable. In the event that the Debtors or the Reorganized Debtors, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtors or the Reorganized Debtors, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Debtors or the Reorganized Debtors, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

Section 6.6     *Minimum Distributions.*

Notwithstanding anything herein to the contrary, the Reorganized Debtors and the Distribution Agents shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar or fractional share of applicable equity interests under the Plan would otherwise be called for, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar or share of applicable equity interests (up or down), with half dollars and half shares of applicable equity interests or less being rounded down.

Section 6.7    *Undeliverable Distributions.*

(a)    *Holders of Certain Undeliverable Distributions.*  If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtors (or their Distribution Agent) as undeliverable, no further distributions shall be made to such Holder. Undeliverable distributions shall remain in the possession of the Reorganized Debtors, subject to Section 6.7(b) of the Plan, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

(b)    *Failure to Claim Undeliverable Distributions.*  No later than 60 days after a distribution has been made to each Holder of an Allowed Claim entitled to receive a distribution under the Plan, the Reorganized Debtors shall file with the Bankruptcy Court a list of the Holders of undeliverable distributions.  This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtors for as long as the Chapter 11 Cases stay open.  Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtors of such Holder's then current address in accordance herewith within 30 days after the filing of the list of Holders of undeliverable distributions shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.  Within 90 days after the mailing or other delivery of any such distribution checks, notwithstanding applicable escheatment Laws, all such distributions shall revert to the Reorganized Debtors. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

(c)    *Failure to Present Checks.*  Checks issued by the Reorganized Debtors (or their Distribution Agent) on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check.  Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 90 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.  Within 90 days after the mailing or other delivery of any such distribution checks, notwithstanding applicable escheatment Laws, all such distributions shall revert to the Reorganized Debtors.  Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

Section 6.8    *Compliance with Tax Requirements/Allocations.*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions reasonably necessary or appropriate to comply with such withholding and reporting requirements, including (a) liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes (b) withholding distributions pending receipt of information necessary to facilitate such distributions including W-8 or W-9 forms and, in the absence of receipt of such

information within a reasonable period of time, deeming such Claims to be waived without further Order of the Court, or (c) establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

Section 6.9    *Surrender of Cancelled Instruments or Securities.*

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or Equity Interest that is discharged by the Plan shall be deemed to have surrendered such certificate or instrument to the Reorganized Debtors.  Except as otherwise expressly provided in the Plan, such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors and Reorganized Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Equity Interests, which shall continue in effect. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or  instruments evidencing Claims that are Unimpaired under the Plan.

Section 6.10    *Claims Paid or Payable by Third Parties.*

(a)    *Claims Payable by Insurance*. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any of the Debtors' insurance policies, if any, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policies.  To the extent that one or more of the Debtors' insurers satisfies or agrees to satisfy in full or in part a Claim, if any, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(b)    *Applicability of Insurance Policies*. Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS OR EQUITY INTERESTS

Section 7.1    *Allowance of Claims and Equity Interests.*

(a)    Except as provided in Article IX of the Plan, each of the Reorganized Debtors after the Effective Date shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Equity Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan.

27467227.1

(b)     Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim.  All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019 or otherwise, shall be binding on all parties.

Section 7.2     *Prosecution of Objections to Claims.*

(a)     Except as otherwise specifically provided in the Plan or order of the Bankruptcy Court, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the General Unsecured Claims Administrator shall have authority, subject to five (5) business days' notice to the Debtors and Reorganized Debtors: (1) to file, withdraw, or litigate to judgment objections to General Unsecured Claims and (2) to settle or compromise any Disputed General Unsecured Claim without any further notice to or action, order, or approval by the Bankruptcy Court.  Any fees, expenses, or costs incurred by the General Unsecured Claims Administrator in connection with the foregoing, including professional fees or expenses, shall be paid exclusively from the Claims Cash Pool Account, and the General Unsecured Claims Administrator shall have no entitlement to payment from the Reorganized Debtors.

(b)     The Reorganized Debtors shall have the sole authority: (1) to file, withdraw, or litigate to judgment objections to any Equity Interests or Claims other than General Unsecured Claims; (2) to settle or compromise any Disputed Claim other than General Unsecured Claims without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises of any Claim or Equity Interest without any further notice to or action, order, or approval by the Bankruptcy Court.

Section 7.3     *Estimation of Claims and Equity Interests.*

Before or after the Effective Date, the General Unsecured Claims Administrator (but solely with respect to General Unsecured Claims), Debtors or Reorganized Debtors, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim or Equity Interest pursuant to section 502(c) of the Bankruptcy Code or Bankruptcy Rule 3012 for any reason, regardless of whether any party previously has objected to such Claim or Equity Interest or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Equity Interest, including during the litigation of any objection to any Claim or Equity Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim or Equity Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim or Equity Interest, that estimated amount shall constitute a maximum limitation on such Claim or Equity Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on

such Claim or Equity Interest.  Each of the foregoing Claims and Equity Interests objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

Section 7.4    *Adjustment to Claims and Equity Interests Without Objection.*

Any Claim or Equity Interest that has been paid or satisfied, or any Claim or Equity Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

Section 7.5    *Disallowance of Certain Claims.*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims and Equity Interests until such time as such Causes of Action against that Entity have been settled or an order of the Bankruptcy Court with respect thereto has been entered and all sums due have been turned over or paid to the Reorganized Debtors.  All Proofs of Claim filed on account of an Indemnification Obligation to a director, officer or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Administrative Claims Bar Date, the Other Priority Claims Bar Date, the General Unsecured Claims Bar Date and the Governmental Unit Claims Bar Date, as applicable, shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims shall not receive any distributions on account of such Claims.**

Section 7.6    *Offer of Judgment.*

The Reorganized Debtors are authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the Holder of a Claim or Equity Interest must pay the costs incurred by the Reorganized Debtors after the making of such offer, the Reorganized Debtors are entitled to setoff such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

Section 7.7    *Amendments to Claims.*

On or after the Effective Date, except as provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and, to the extent such prior authorization is not received, any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

## ARTICLE VIII.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

Section 8.1    *Conditions Precedent to the Effective Date.*

The Effective Date shall not occur unless and until each of the following conditions have occurred or been waived in accordance with the terms herein:

(a)    the Bankruptcy Court shall have approved the Disclosure Statement, in a form reasonably acceptable to the Debtors, the Consenting Secured Lenders and the Investor, which consent shall not be unreasonably withheld, conditioned, or delayed, and the order approving the Disclosure Statement shall not have been stayed;

(b)    the Confirmation Order shall have become a Final Order (unless otherwise waived by the Consenting Lenders), shall have been entered by December 31, 2020 (or such other later date as agreed to by the Consenting Secured Lenders in their sole discretion), shall be consistent in all material respects with this Plan, and shall otherwise be in a form reasonably acceptable to the Debtors, the Consenting Secured Lenders, and the Investor (and with respect to those provisions thereof that affect the rights, obligations, liabilities and duties of the DIP Agent or the Prepetition Agent, to the DIP Agent or the Prepetition Agent, as applicable), which consent as to the form of the Confirmation Order shall not be unreasonably withheld, conditioned, or delayed, and the Confirmation Order shall not have been stayed; *provided, however*, that the Confirmation Order may not conflict with the treatment of the DIP Claims and the Secured Loan Claims without the prior consent of the DIP Agent and the Holders of the Secured Loan Claims, which consent may be withheld in their respective sole discretion;

(c)    all documents, certificates, and agreements necessary to implement the Plan shall have been executed and tendered for delivery to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable Laws, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date);

(d)    all actions necessary to implement the Plan shall have been effected;

(e)     the Bankruptcy Court shall have entered the DIP Orders, and the final DIP Order shall have become a Final Order, and the DIP Facility shall not have been terminated and shall continue to be in full force and effect in accordance with its terms;

(f)     not later than the Footprint Notification Date, the Consenting Secured Lenders shall notify the Debtors that the (i) list of assumed Unexpired Leases, (ii) the list of the rejected Unexpired Leases, (iii) the terms of any amended, modified or otherwise renegotiated Unexpired Leases and (iv) the annualized savings resulting from (i)–(iii) ((i) through (iv) collectively, the "Go-Forward Footprint and Savings") are acceptable to the Consenting Secured Lenders; *provided, however*, that in the event that Consenting Secured Lenders do not provide such notice on or before the Footprint Notification Date, the Go-Forward Footprint and Savings shall be deemed acceptable to the Consenting Secured Lenders. After the Footprint Notification Date, no additional assumption, rejection or modification of Unexpired Leases shall have occurred without the consent of Consenting Secured Lenders;

(g)     all governmental and material third party approvals and consents necessary in connection with the Restructuring Transactions shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on the Restructuring Transactions;

(h)     there shall be no ruling, judgment or order issued by any Governmental Unit making illegal, enjoining or otherwise preventing or prohibiting the consummation of the Restructuring Transactions;

(i)     the aggregate amount of (i) all Allowed Professional Fee Claims approved by the Bankruptcy Court prior to the Effective Date, ***plus*** (ii) all Professional Fee Claims that have accrued as of the Effective Date but may become Allowed after the Effective Date shall not exceed the Professional Fee Reserve Amount ***plus*** (x) the amount of any retainers held by the Professionals and (y) the amounts received by such Professionals on account of their Allowed Professional Fee Claims prior to the Effective Date (or such greater amount agreed to by the Consenting Secured Lenders in their sole discretion);

(j)     the Professional Fee Account shall have been established and the Professional Fee Reserve Amount shall have been funded in accordance with this Plan; *provided*, for the avoidance of doubt, that the Professional Fee Account shall be funded in an amount not to exceed the sum of (i) the amount set forth in the DIP Budget for Professionals, ***minus*** (ii) the amounts paid to such Professionals (other than through application of retainers) prior to the Effective Date (or such other amount to which the Consenting Secured Lenders consent);

(k)     The Claims Cash Pool Account shall have been established and funded with $650,000; provided, however, that nothing herein shall relieve the Debtors or

Reorganized Debtors, as applicable, from any additional funding obligations of the Claims Cash Pool Account under Article IV of the Plan;

(l)      the Debtors shall have paid in full in Cash all Restructuring Expenses incurred or estimated to be incurred, through the Effective Date; and

(m)     except as otherwise agreed by the Exit Agent in its sole discretion, the conditions to effectiveness of the Exit Facility Documents have been satisfied or waived in accordance with the terms thereof, and the Exit Facility Documents are in full force and effect and binding on all parties thereto.

Section 8.2    *Waiver of Conditions Precedent.*

The Debtors or the Reorganized Debtors, as applicable, with the consent of the Consenting Secured Lenders and the Investor, which consent shall not be unreasonably withheld, conditioned, or delayed (except as to Section 8.1(b) which may be withheld as therein provided), may waive any of the conditions to the Effective Date set forth above at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan.   The failure of the Debtors or Reorganized Debtors, as applicable, to exercise any of the foregoing rights shall not be deemed a waiver of such rights or any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

Section 8.3    *Effect of Failure of Conditions Precedent.*

If the Effective Date does not occur, then upon notice by the Debtors to the Bankruptcy Court, that: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan, the Confirmation Order, or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims, Equity Interests, or Causes of Action; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

Section 8.4    *Reservation of Rights.*

The Plan shall have no force or effect unless and until the Confirmation Order is entered. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

Section 8.5    *Substantial Consummation of Plan.*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE IX.

## EFFECT OF PLAN CONFIRMATION

Section 9.1    *Binding Effect.*

Subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Plan shall bind and inure to the benefit of the Debtors, the Reorganized Debtors, the Consenting Stakeholders, and each Holder of a Claim against or Equity Interest in any Debtor or Reorganized Debtor and inure to the benefit of and be binding on such Debtor's, Reorganized Debtor's, the Consenting Stakeholders', and Holder's respective successors and assigns, regardless of whether the Claim or Equity Interest of such Holder is Impaired under the Plan and whether such Holder has accepted or rejected the Plan or is deemed to have accepted or rejected the Plan.

Section 9.2    *Discharge of Claims and Termination of Equity Interests; Compromise and Settlement of Claims, Equity Interests, and Controversies.*

(a)    Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Equity Interests and Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtors, the Reorganized Debtors or any of their Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, including demands, liabilities, and causes of action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest is Allowed; or (iii) the Holder of such Claim or Equity Interest has accepted or rejected, or been deemed to accept or reject, the Plan.  Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

(b)    Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is

27467227.1

in the best interests of the Debtors, their Estates, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against the Debtors and their Estates and Causes of Action against other Entities.

Section 9.3    *Releases.*

(a)    ***RELEASES BY THE DEBTORS***.  PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE EFFORTS OF THE RELEASED PARTIES TO FACILITATE THE EXPEDITIOUS REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, PURSUANT TO THE CONFIRMATION ORDER, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AND ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY SHALL BE DEEMED FOREVER RELEASED AND DISCHARGED BY EACH AND ALL OF THE DEBTORS, THE REORGANIZED DEBTORS, AND THEIR ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR FIXED, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, AT EQUITY, OR OTHERWISE, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, THOSE THAT ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR EQUITY INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE BUSINESS OPERATIONS OF THE DEBTORS, ACTIONS TAKEN BY THE DEBTORS' BOARD OF DIRECTORS, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS (OTHER THAN ANY INTERCOMPANY CLAIMS THAT HAVE BEEN REINSTATED AS CONTEMPLATED ABOVE), THE RESTRUCTURING, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE

27467227.1

PLAN OR ANY OTHER RELATED AGREEMENT, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITY DOCUMENTS, OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING FROM ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE; *PROVIDED* THAT THE FOREGOING RELEASE SHALL NOT APPLY TO ANY EXPRESS CONTRACTUAL OR FINANCIAL OBLIGATIONS OR ANY RIGHT OR OBLIGATION ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENTS (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) ENTERED INTO PURSUANT TO, IN CONNECTION WITH, OR CONTEMPLATED BY THE PLAN, AND ANY RIGHT TO ENFORCE THE PLAN AND CONFIRMATION ORDER IS NOT SO RELEASED.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTORS' RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH DEBTOR RELEASE IS (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF SUCH CLAIMS; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE DEBTORS OR REORGANIZED DEBTORS OR THEIR RESPECTIVE ESTATES ASSERTING ANY CLAIM, CAUSE OF ACTION, OR LIABILITY RELATED THERETO, OF ANY KIND WHATSOEVER, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.

(b) *RELEASES BY HOLDERS OF CLAIMS AND EQUITY INTERESTS.* AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, EACH OF THE RELEASING PARTIES (REGARDLESS OF WHETHER A RELEASING PARTY IS A RELEASED PARTY) SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR AND EACH OTHER RELEASED PARTY FROM ANY AND ALL CLAIMS, EQUITY INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR FIXED, MATURED OR UNMATURED, EXISTING OR HEREINAFTER ARISING, IN LAW, AT EQUITY, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, EACH OTHER RELEASING PARTY OR THEIR ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED

27467227.1

**TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE BUSINESS OPERATIONS OF THE DEBTORS, ACTIONS TAKEN BY THE DEBTORS' BOARD OF DIRECTORS, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS, ENTRY INTO THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, THE DIP FACILITY DOCUMENTS, THE EXIT FACILITY DOCUMENTS, OR OTHER DOCUMENTS OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING FROM ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE; *PROVIDED* THAT THE FOREGOING RELEASE SHALL NOT APPLY TO ANY EXPRESS CONTRACTUAL OR FINANCIAL OBLIGATIONS OR ANY RIGHT OR OBLIGATION ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENTS (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) ENTERED INTO PURSUANT TO, IN CONNECTION WITH, OR CONTEMPLATED BY THE PLAN, AND ANY RIGHT TO ENFORCE THE PLAN AND CONFIRMATION ORDER IS NOT SO RELEASED.**

Section 9.4    *Exculpation and Limitation of Liability.*

(a)    **UPON AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE DEBTORS AND THEIR DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, RESTRUCTURING CONSULTANTS AND OTHER PROFESSIONAL ADVISORS AND AGENTS SHALL BE DEEMED TO HAVE SOLICITED ACCEPTANCES OF THE PLAN IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, INCLUDING SECTION 1125(E) OF THE BANKRUPTCY CODE.**

(b)    **THE EXCULPATED PARTIES SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN THE PERIOD STARTING ON AND INCLUDING THE PETITION DATE AND ENDING ON AND INCLUDING THE EFFECTIVE DATE IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING, OR EFFECTING THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER ACT TAKEN OR OMITTED TO BE TAKEN IN THE PERIOD STARTING ON AND INCLUDING THE PETITION DATE AND ENDING ON**

27467227.1

**AND INCLUDING THE EFFECTIVE DATE IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS; *PROVIDED* THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT; *PROVIDED, FURTHER,* THAT TO THE EXTENT PERMITTED BY APPLICABLE LAW EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING HIS, HER OR ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE PLAN OR ANY OTHER RELATED DOCUMENT, INSTRUMENT, OR AGREEMENT.**

(c)    **THE EXCULPATED PARTIES HAVE, AND UPON CONFIRMATION, SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, INCLUDING WITH REGARD TO THE DISTRIBUTIONS OF REORGANIZED EQUITY INTERESTS PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT AND SHALL NOT BE LIABLE AT ANY TIME FOR THE VIOLATIONS OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.**

Section 9.5    *Injunction.*

**THE SATISFACTION, RELEASE AND DISCHARGE PURSUANT TO THIS ARTICLE IX OF THE PLAN SHALL ALSO ACT AS AN INJUNCTION AGAINST ANY ENTITY BOUND BY SUCH PROVISION AGAINST COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, OR RECOVER ANY CLAIM OR CAUSE OF ACTION SATISFIED, RELEASED, OR DISCHARGED UNDER THE PLAN OR THE CONFIRMATION ORDER TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED BY THE BANKRUPTCY CODE, INCLUDING, WITHOUT LIMITATION, TO THE EXTENT PROVIDED FOR OR AUTHORIZED BY SECTIONS 524 AND 1141 THEREOF.**

Section 9.6    *Setoffs and Recoupment.*

(a)    Except as otherwise provided herein or in the DIP Orders, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or non-bankruptcy Law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the applicable Debtor or Reorganized Debtor may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order or otherwise); *provided* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action.

27467227.1

(b)      In no event shall any Holder of Claims be entitled to set off or recoup any Claim against any Claim, right, or Cause of Action of a Debtor or a Reorganized Debtor, as applicable, unless such Holder has timely filed a Proof of Claim with the Bankruptcy Court preserving such setoff or recoupment in such Proof of Claim.

Section 9.7      *Release of Liens.*

(a)      Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.

(b)      To the extent that any Holder of a Secured Loan Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens or security interests to secure such Holder's Secured Loan Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

Section 9.8      *Dissolution of Committee.*

On the Effective Date, the Committee shall dissolve and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases.  The Reorganized Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date.

## ARTICLE X.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)      Allow, disallow, determine, liquidate, classify, estimate or establish the priority, nature, validity, amount or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance, priority or amount of Claims or Equity Interests;

27467227.1

(b)    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)    Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Costs arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

(d)    Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(e)    Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)    Adjudicate, decide or resolve any and all matters related to Causes of Action;

(g)    Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(h)    Resolve any and all avoidance or recovery actions under sections 105, 502(d), 542 through 551 and 553 of the Bankruptcy Code;

(i)    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(j)    Enter and implement such orders as may be necessary or appropriate to execute, implement, or Consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(k)    Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(l)    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

(m)    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(n)     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Equity Interest for amounts not timely repaid;

(o)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(p)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

(q)     Enter an order or final decree concluding or closing the Chapter 11 Cases;

(r)     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

(s)     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(t)     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan (other than any dispute arising after the Effective Date under, or directly with respect to, the Exit Facility Documents, the Management Incentive Plan, and the Investment, which such disputes shall be adjudicated in accordance with the terms of the Exit Facility Documents, and the respective documents evidencing the Management Incentive Plan and the Investment);

(u)     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(v)     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(w)     Enforce all orders previously entered by the Bankruptcy Court; and

(x)     Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

Section 11.1   *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all

Holders of Claims and Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

Section 11.2    *Closing of Certain Chapter 11 Cases.*

As soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall submit a separate order to the Bankruptcy Court under certification of counsel closing the Chapter 11 Cases for all Debtors other than the Remaining Debtor. The Reorganized Debtors may at any point file a motion to close the Chapter 11 Case for the Remaining Debtor. All rights of the Reorganized Debtors are reserved to file a motion to reopen a closed Chapter 11 Case. For procedural purposes only, matters concerning Claims may be heard and adjudicated in the Chapter 11 Case of the Remaining Debtor regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed. Such administration of claims shall not cause a "substantive" consolidation of the respective Debtors' estates. The closing of a Chapter 11 Case shall in no way prejudice the Reorganized Debtors' rights to object or otherwise contest a Proof of Claim filed against any of the Debtors or to commence or prosecute any action to which any of the Debtors may be party, or a claimant's right to receive distributions under the Plan.

Section 11.3    *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of Title 28 of the U.S. Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code or as agreed to by the U.S. Trustee and Reorganized Debtors, shall be paid when due and payable for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

Section 11.4    *Amendments.*

(a)    *Plan Modifications*. Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules: (a) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments and modifications to satisfy section 1129(b) of the Bankruptcy Code; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; *provided* that any amendments or modifications that affect the rights, obligations, liabilities and duties of the DIP Agent or the Prepetition Agent shall require the consent of the DIP Agent or the Prepetition Agent, as applicable.

(b)    *Effect of Confirmation on Modifications*. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved

27467227.1

56

pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

(c)    *Certain Technical Amendments*.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court; *provided* that such technical adjustments and modifications do not adversely affect the treatment of Holders of Claims or Equity Interests under the Plan.

Section 11.5    *Revocation or Withdrawal of Plan.*

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the entry of the Confirmation Order and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then: (a) the Plan with respect to such Debtor or Debtors shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void with respect to such Debtor or Debtors; and (c) nothing contained in the Plan with respect to such Debtor or Debtors shall: (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission of any sort by the Debtors or any other Entity.

Section 11.6    *Governing Law.*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal Law, rule or regulation is applicable, or to the extent that an exhibit, supplement, or other document related to the Plan (including, without limitation, the DIP Facility Documents and the Exit Facility Documents), provides otherwise, the Plan shall be governed by and construed in accordance with the Laws of the State of Delaware, without giving effect to the principles of conflict of Laws thereof that would require application of the Law of another jurisdiction.

Section 11.7    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, Affiliate, assign, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

Section 11.8    *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to render it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  Notwithstanding any such holding,

alteration or interpretation, the remaining terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 11.9    *Controlling Document.*

In the event of an inconsistency between the Plan and Disclosure Statement, the terms of the Plan shall control in all respects.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided* that if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

Section 11.10  *Filing of Additional Documents.*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

Section 11.11  *Reservation of Rights.*

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

Section 11.12  *Service of Documents.*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall also be served on:

> Rubio's Restaurants, Inc.
> 2200 Faraday Avenue, Suite 250
> Carlsbad, CA 92008
> Attention: Marc Simon
> E-mail:  msimon@rubios.com

with copies to:

Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
Attention: Gregg M. Galardi and Cristine Pirro Schwarzman
E-mail: gregg.galardi@ropesgray.com and
cristine.schwarzman@ropesgray.com

*Co-Counsel to the Debtors*

and

Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Attention: M. Blake Cleary, Edmon L. Morton,
Ryan M. Bartley, and Betsy L. Feldman
E-mail: mbcleary@ycst.com, emorton@ycst.com,
rbartley@ycst.com, and bfeldman@ycst.com

*Co-Counsel to the Debtors*

and

Hogan Lovells US LLP
390 Madison Avenue
New York, New York 10017
Attention: Christopher R. Donoho III, John D. Beck, and
Baraka Nasari
E-mail: chris.donoho@hoganlovells.com,
john.beck@hoganlovells.com, and
baraka.nasari@hoganlovells.com

and

Hogan Lovells US LLP
1735 Market Street, Floor 23
Philadelphia, Pennsylvania 19103
Attention: Kevin J. Carey
E-mail: kevin.carey@hoganlovells.com

and

Hogan Lovells US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Attention: Erin N. Brady
E-mail: erin.brady@hoganlovells.com

*Proposed Co-Counsel to the Committee*

and

Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801-3700
Attention: Christopher M. Samis, L. Katherine Good, and
Aaron H. Stulman
E-mail: csamis@potteranderson.com, kgood@potteranderson.com,
and astulman@potteranderson.com

*Proposed Co-Counsel to the Committee*

and

Goldberg Kohn Ltd.
55 East Monroe Street, Suite 3300
Chicago, IL 60603
Attention: Randall Klein and Yasamin Kaye
E-mail: randall.klein@goldbergkohn.com and
yasamin.kaye@goldbergkohn.com

*Co-Counsel to the DIP Agent, the DIP Lenders, the Prepetition
Agent, and the Prepetition Secured Lenders*

and

Richards, Layton & Finger, PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attention: John Knight and Paul Heath
knight@rlf.com and heath@rlf.com

*Co-Counsel to the DIP Agent, the DIP Lenders, the Prepetition
Agent, and the Prepetition Secured Lenders*

and

27467227.1

Foley Hoag LLP
155 Seaport Blvd., Suite 1600
Boston, MA 02210
Attention: Andrew Schwartz
E-mail: aschwartz@foleyhoag.com

*Counsel to the Investor*

and

Foley Hoag LLP
1301 Avenue of the Americas
New York, NY 10019
Attention: Alison Bauer
E-mail: abauer@foleyhoag.com

*Counsel to the Investor*

and

Office of the United States Trustee
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
Attention: Linda Richenderfer and John Schanne
E-mail: linda.richenderfer@usdoj.gov and john.schanne@usdoj.gov

After the Effective Date, the Reorganized Debtors have authority to send a notice to Entities informing them that in order to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Section 11.13  *Section 1125(e) of the Bankruptcy Code.*

As of the Confirmation Date, (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code, and any applicable non-bankruptcy Law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors, the Consenting Secured Lenders, the Investor, the Prepetition Agent, the DIP Agent and each of their respective Affiliates, agents, directors, officers, employees, advisors and attorneys shall be deemed to have participated in good faith, and in compliance with the applicable provisions of the Bankruptcy Code, in the offer and issuance of any securities under the Plan, and, therefore, are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for any violation of any applicable Law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

27467227.1

Section 11.14  *Tax Reporting and Compliance.*

The Reorganized Debtors shall be authorized to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

Section 11.15  *Exhibits, Schedules, and Supplements.*

All exhibits, schedules, and supplements to the Plan are incorporated into and are a part of the Plan as if fully set forth herein.

Section 11.16  *Entire Agreement.*

Except as otherwise indicated, on the Effective Date, the Plan shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

Section 11.17  *Allocation of Payments.*

To the extent that any Allowed Claim entitled to distribution hereunder is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for all U.S. federal income tax purposes, be allocated to the principal amount of such Claim first, and then, to the extent that the consideration exceeds such principal amount, to the portion of such Claim representing accrued but unpaid interest (but solely to the extent that interest is an allowable portion of such Allowed Claim).

Section 11.18  *Conflicts.*

In the event of a conflict between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of a conflict between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order); *provided* that in the event any such conflict is a material conflict with the treatment of the Secured Loan Claims in Class 3 of the type that would require the Debtors to re-solicit the votes of Holders of Claims and Equity Interests in Class 3 against the Debtors under section 1127 of the Bankruptcy Code, the Plan shall control solely with respect to such provision giving rise to such material conflict.  In the event of a conflict between the Confirmation Order (entered in accordance with Section 8.1(b) herein) and the Plan, the Confirmation Order shall control.

Dated: December 14, 2020

Respectfully submitted,

Rubio's Restaurants, Inc.
on behalf of itself and each of its Debtor affiliates

By:      */s/ Melissa Kibler*
Name:   Melissa Kibler
Title:    Chief Restructuring Officer